[No. C037609. Third Dist. May 23, 2002.]

DIANA M. BONTÁ, as Director, etc., Plaintiff and Appellant, v.
DEBORAH S. BURKE et al., Defendants and Respondents.

COUNSEL

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, and Frank S. Furtek, Deputy Attorney General, for Plaintiff and Appellant.

Catherine L. Hughes; Law Offices of John L. Boze and John L. Boze for Defendants and Respondents.

OPINION

**RAYE, J.**—The difficult question posed by this case is whether the State of California (State) has a claim for reimbursement of Medi-Cal expenses against the beneficiaries of real property conveyed to them by a recipient of health services who had retained a life estate in the property and the right to revoke their interest. The trial court granted the beneficiaries a summary judgment against the State, concluding that the property was not part of the decedent's estate at the time of her death. We reverse.

FACTS

In 1994 Lennie J. Smith executed a grant deed granting a fee simple interest in her house to her daughters, Deborah S. Burke and Linda Osborn, but retained a life estate in the property and the right to revoke the remainder. Four months before Smith died in 1996, the deed was recorded.

From September 1994 through December 23, 1996, the Department of Health Services (Department) paid for health care services and health care premiums for Smith. After Smith died, Diana M. Bonta´, the Director of Health Services, filed a complaint to enforce and collect money due on a Medi-Cal creditor's claim for $45,357.58. The trial court denied the Department's motion for summary judgment and granted Burke and Osborn's motion for summary judgment.

## DISCUSSION

In 1965 the United States Congress established Medicaid, a cooperative federal/state program to provide health care services to the poor. (Tit. XIX of the Social Security Act, codified at 42 U.S.C. § 1396 et seq.) The federal government partially reimburses a state for medical assistance provided to eligible low-income persons as long as the state abides by the requirement of the Social Security Act to qualify for Medicaid funds. California participates in the Medicaid program through the California Medical Assistance Program (Medi-Cal). (Welf. & Inst. Code, § 14000 et seq.)

Congress enabled states to recover the costs for medical services from the estate of the former recipient. (42 U.S.C. § 1396p(b)(1)(B).) According to federal law, the term "estate," with respect to a deceased individual, "(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and [¶] (B) may include, at the option of the State . . . any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." (42 U.S.C. § 1396p(b)(4).)

Pursuant to the federal enabling statute, California enacted a mandatory estate recovery program. Section 14009.5 of the Welfare and Institutions Code states in relevant part: "[T]he department [of Health Services] shall claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received or the value of the property received by any recipient from the decedent by distribution or survival, whichever is less." (Welf. & Inst. Code, § 14009.5, subd. (a).)

California utilizes the federal definition of "estate." The regulations for the Medi-Cal estate recovery program define "estate" as "all real and personal property and other assets in which the individual had any legal title

or interest at the time of death (to the extent of such interest), including assets conveyed to a dependent, survivor, heir or assignee of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement[.]" (Cal. Code Regs., tit. 22, § 50960, subd. (b)(1).)

In *Belshé v. Hope* (1995) 33 Cal.App.4th 161 [38 Cal.Rptr.2d 917] (*Hope*), the Court of Appeal considered whether property passing by way of a revocable inter vivos trust was part of the estate of the decedent for purposes of recovery of Medi-Cal benefits. The beneficiaries of Myrtle Hope's trust contended that section 14009.5 of the Welfare and Institutions Code impermissibly enlarged the scope of recovery allowed under federal law by allowing recovery from outside the estate. (*Hope, supra*, 33 Cal.App.4th at p. 170.) The court analyzed whether the federal statute, which before 1993 did not define "estate," included nonprobate transfers on death.

There had been a vociferous debate on the scope of an "estate" prior to 1993. The court in *Hope* was part of that debate. In its attempt to decipher congressional intent, the court examined the purpose of the Medicaid Act. "One of the express purposes of the Medicaid Act 'is to enable "each state, as far as practicable under the conditions in such state, to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . ." (42 U.S.C. § 1396.)' [Citation.] [¶] Allowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services. Furthermore, if a person has assets available to pay for the benefits, then the state should be allowed to recover from those assets because that person was not fully entitled to all benefits." (*Hope, supra*, 33 Cal.App.4th at p. 173.)

The court found the term "estate" ambiguous because it could mean probate estate or taxable estate. Turning to the Internal Revenue Code, wherein Congress included revocable transfers in the value of the gross estate for federal taxes, the court concluded that Congress intended the term "estate" to be broader than the probate estate. According to the court in *Hope*, if Congress had intended such a narrow definition, it would have said so. (*Hope, supra*, 33 Cal.App.4th at pp. 173-174.)

The court rejected the beneficiaries' argument that the 1993 amendment defining "estate" was compelling evidence that Congress had intended to broaden the definition, and therefore, a pre-1993 "estate" must be limited to

the common law definition. Because the amendment did not merely define "estate" but contained major substantive changes and additions, the court concluded "that Congress was merely clarifying the original intent by expressly declaring the meaning of the words used in the act. [¶] We find Congress intended the term 'estate' to have a broad meaning. By including probate and nonprobate transfers on death in the estate, the purposes of the act will be better achieved and the broad definition will ensure that assets of a recipient are used for the cost of care rather than given away." (*Hope*, *supra*, 33 Cal.App.4th at p. 175.)

Two federal cases concluded otherwise. In *Citizens Action League v. Kizer* (9th Cir. 1989) 887 F.2d 1003 (*Kizer*) and *Bucholtz v. Belshe* (9th Cir. 1997) 114 F.3d 923 (*Belshe*), the Ninth Circuit Court of Appeals held that the term "estate" as used in 42 United States Code section 1396p prior to the October 1, 1993, amendment was limited to the common law definition. Consequently, neither property passing to a joint tenant by right of survivorship (*Kizer*) nor property passing to a beneficiary of a revocable inter vivos trust (*Belshe*) was part of a decedent's estate under the Medicaid Act. In *Kizer*, Judge Canby registered a dissent later embraced by the court in *Hope*. (*Kizer*, *supra*, 887 F.2d at pp. 1008-1009.) We need not weigh in on this debate. *Hope*, *Kizer*, and *Belshe* turned on an assessment of congressional intent in the absence of an express definition of estate. Congress has now provided a definition and California has incorporated it into its recovery program. We turn then to the words of the relevant statutes and regulation.

The California Medi-Cal estate recovery program mandates the Department to "claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival . . . ." (Welf. & Inst. Code, § 14009.5, subd. (a).) Moreover, the definition of "estate" under the federal statute and the state regulation includes, in relevant part, real property "in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." (42 U.S.C. § 1396p(b)(4); Cal. Code Regs., tit. 22, § 50960, subd. (b)(1).)

In granting Burke and Osborn's motion for summary judgment, the trial court stated: "The law is clear that the fact that the grant of the fee simple interest was revocable does not change the fact that defendants received a vested interest by the transfer. [Citation.] The property interest held by decedent's heirs was granted to them in 1994. The subject property did not pass to them by distribution or survival." The court recognized that

*Hope* expanded the definition of estate but concluded it "still requires that the transfer to the recipient occur upon the death of decedent."[1]

The simple question is what passed when? The answer for purposes of recovering Medi-Cal expenses is difficult. Burke and Osborn insist that their mother's life estate terminated at the moment of her death, their interest had vested in 1994, and consequently nothing passed to them "by distribution or survival." The Attorney General, on the other hand, argues that as long as the recipient of services reserves an interest in the property and the power to revoke the remainder until she dies, the property is in her estate. Burke and Osborn took fee simple possession, under the language of Welfare and Institutions Code section 14009.5, by survival. According to the Attorney General, "In form, there was transfer of a defeasible remainder interest when the deed was executed. In substance, Lennie Smith's property interest was only received by [Burke and Osborn] when they survived Lennie Smith."

Burke and Osborn's argument is plausible because a remainderman's interest did vest at the time the property was transferred even though their mother retained both a life estate and the right to revoke their interest. (*Tennant v. John Tennant Memorial Home* (1914) 167 Cal. 570 [140 P. 242].) But we must ascertain the meaning of an "estate" not as the term is used in either real property or probate law but as a term of art for the purposes of the Medicaid and Medi-Cal programs. In that context, we conclude that the State has a claim against the real property for several reasons.

First, the definition of "estate" in federal and state law is very broad. Whatever Congress may have intended before 1993, it included an expansive definition in the 1993 amendment, evidencing an intent to provide states with the authority to obtain reimbursement for medical services from beneficiaries who obtained their interest through a vast array of types of transfers. Those types of transfers include "joint tenancy, tenancy in common, survivorship, life estate, living trust, *or other arrangement*." (42 U.S.C. § 1396p(b)(4), italics added.) The inclusion of the catchall "or other arrangement" suggests that Congress intended the definition to be as all-inclusive as possible.

Second, allowing the State to recover as much as possible of the costs of medical services provided to low-income persons furthers the purpose of the Medicaid and Medi-Cal programs. The recovered costs replenish the program and allow "the state to . . . provide future services." (*Hope, supra,* 33

---

[1]The trial court considered Smith's right to transfer property without jeopardizing her eligibility for benefits. The Attorney General asks us to take judicial notice of eligibility requirements. We deny the request. Eligibility is not at issue in this appeal.

Cal.App.4th at p. 173.) Hence, recovery does not turn on "technical differences in the character of how property is owned by a recipient of Medicaid Act benefits in order to permit recovery." (*Id.* at p. 174.)

Third, Welfare and Institutions Code section 14009.5, subdivision (a) compels the Department to file a claim against "any recipient of the property of that decedent by distribution or survival . . . ." The Legislature chose the term "survival" rather than the more familiar term "survivorship." Again, we must presume the choice was both intentional and significant. While a joint tenant takes title by the right of survivorship, a rather narrow class of owners, the Legislature declared that the Department must file against those who received the property by surviving the decedent. Here, Burke and Osborn's interest was realized when the power to revoke terminated, that is, when Smith died and they survived her death.

We conclude that Smith retained a significant "interest in the property" until her death. As a life tenant she retained not only the enjoyment of the property but also, as the holder of the right to revoke the remainder, the unbridled power to divest her daughters of any interest whatsoever. As a consequence, the property had no value to them until Smith died. Consistent with the legislative policy of reaching assets not irrevocably transferred to beneficiaries, Smith's interest in the real property passed to her daughters at the time of her death, who took it by survival. The Department, therefore, is entitled to recover from the recipients of her property the cost of the medical services rendered to Smith. She received the services she needed during her lifetime and the State is entitled to reimbursement after her death.

The judgment is reversed. The parties shall bear their own costs of appeal.

Scotland, P. J., and Davis, J., concurred.