In re ESTATE OF Jean GULLBERG,
a/k/a Jean Weiland Gullberg,
Deceased.

No. C0–02–668.

Court of Appeals of Minnesota.

Oct. 29, 2002.

James C. Backstrom, Dakota County Attorney, Margaret M. Horsch, Assistant County Attorney, Dakota County Judicial Center, Hastings, MN, for appellant Dakota County.

Mike Hatch, Attorney General, Suzette C. Schommer, Assistant Attorney General, St. Paul, MN, for intervenor Department of Human Services.

Randy F. Boggio, Bloomington, MN, for respondent.

## OPINION

KLAPHAKE, Judge.

Intervenor appellant Minnesota Department of Human Services (the state) and appellant Dakota County (the county) challenge a district court decision denying the county's claim against respondent, the Estate of Jean Gullberg, for reimbursement of medical assistance benefits paid on behalf of Jean Gullberg's husband, Walter Gullberg, who predeceased her. The district court denied the county's petition for allowance of the claim, holding that Minnesota's estate recovery statute, Minn.Stat. § 256B.15, subd. 2 (2000), is preempted by 42 U.S.C. § 1396p(b)(4)(B) (2000).

On appeal, this court has granted the state's motion to intervene and the county's subsequent motion to join in the state's brief. Because Minnesota's estate recovery statute is preempted only to the extent that it conflicts with federal law, we reverse and remand to determine the nature and extent of Walter Gullberg's interest in the homestead at the time of his death.

## FACTS

Walter and Jean Gullberg were married when they purchased their homestead property in 1983. The warranty deed listed them as joint tenants. On October 30, 1992, Walter Gullberg conveyed his interest in the homestead by quit claim deed to Jean Gullberg, who was still his wife. Less than one month later, Walter Gullberg applied for medical assistance. On the application for medical assistance, the homestead was valued at between $57,300 and $59,000. Between December 1, 1992 and his death on February 13, 1994, at the age of 70, Walter Gullberg received $40,081.31 in medical assistance benefits.

Jean Gullberg died more than six years later, on September 11, 2000, having never received medical assistance benefits. The only asset listed in her estate inventory was the homestead, which was valued at $119,900.

On March 15, 2001, the county filed a claim in the amount of $40,081.31 against the estate under Minnesota's estate recovery statute, Minn.Stat. § 256B.15, subd. 2 (2000). The Gullbergs' daughter, who had been appointed personal representative of the estate, disallowed the claim. The county thereafter filed a petition with the district court seeking allowance of the claim. On May 31, 2001, while the county's petition was pending, the personal representative sold the homestead and placed the proceeds in the estate account.

In denying the county's claim against the estate, the district court concluded:

> The State may not seek reimbursement of Medical Assistance benefits from the assets of the estate of the surviving spouse of a Medical Assistance recipient where those assets were conveyed to the recipient's surviving spouse prior to the recipient's death.

The court reasoned that because federal law limits the definition of "estate" to property and assets in which the recipient had legal title at the time of death, federal law preempts Minnesota's estate recovery statute, which defines "estate" to include any property that was jointly owned at any time during the marriage.

## ISSUE

Did the district court err in concluding that Minnesota's estate recovery statute is preempted by federal law, thus disallowing the county's claim in its entirety?

## ANALYSIS

■ The issue of "[w]hether federal law preempts state law is generally an issue of statutory construction," which is reviewed de novo. *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002) (citing *Pikop v. Burlington N.R.R. Co.*, 390 N.W.2d 743, 748 (Minn.1986)). To the extent that the preemption doctrine finds its roots in the supremacy clause, it implicates constitutional concerns, burdens, and standards. *See* U.S. Const. art. VI; *Martin*, 642 N.W.2d at 17 (finding of preemption implicates obligation to interpret statute to avoid constitutional defects).

■ Federal law will preempt state law in three distinct situations: explicit preemption, implicit preemption, or conflict preemption. *Martin*, 642 N.W.2d at 10–11. Because Congress "specifically permits state action regarding Medicaid" and "requires that a participating state's Medicaid plan conform to federal requirements," this case does not involve explicit or implicit preemption. *See id.* at 11 ("there is no explicit or implicit federal preemption of the [Medicaid] field"). Rather, this case presents a "conflict preemption" situation, in which preemption will arise only "when state law conflicts with federal law, either because compliance with both federal and state law is impossible or because the state law is an obstacle to the accomplishment of the purposes of the federal scheme." *Id.* (citations omitted).

■ Since 1993, federal law has required states to recover the costs of certain medical assistance provided to individuals over the age of 55 from the "individual's estate," but only after the "death of the individual's surviving spouse." 42 U.S.C. § 1396p(b) (2000). Federal law defines the term "estate" to include all assets within the individual's estate under state probate law. 42 U.S.C. § 1396p(b)(4)(A) (2000). At the "option" of a state, an individual's "estate" may also include

> any other real and personal property and any other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4)(B) (2000). Thus, under federal law, a state may choose to enact legislation that allows recovery of claims against a surviving spouse's estate if the estate contains property or assets in which the Medicaid recipient had some legal title or interest at the time of his or her death. *See, e.g., In re Estate of Jobe,*

590 N.W.2d 162, 165–66 (Minn.App.1999), *review denied* (Minn. May 26, 1999); *In re Estate of Wirtz*, 607 N.W.2d 882, 886 (N.D. 2000).

In Minnesota, the estate recovery statute allows claims against the estate of a surviving spouse but limits those claims "to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage." Minn.Stat. § 256B.15, subd. 2 (2000). In *Jobe*, 590 N.W.2d at 165–66, this court allowed a claim against a surviving spouse's estate where the only asset in that estate consisted of the homestead, which was held by the couple in joint tenancy and became the property of the surviving spouse on the death of the recipient. In so doing, we concluded that there was no preemption because compliance with federal and state law was possible. *Id.* at 166.

This case presents a slightly different situation. Here, the recipient spouse conveyed the homestead, which was marital property and held in joint tenancy, to the surviving spouse shortly before he applied for and began to receive medical assistance benefits. While the county's claim against the estate is clearly allowed by Minnesota's estate recovery statute, the issue is whether allowance of the claim in its entirety complies with federal law.

▮ Again, federal law permits a state to define a Medicaid recipient's estate to include

> other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a sur-

vivor * * * of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4)(B).[1]

▮ At the time of his death in early 1994, Walter Gullberg did not hold legal title to the homestead, having conveyed it in late 1992 to his wife, Jean Gullberg. Nevertheless, he continued to have some legal "interest" in the homestead because he and Jean Gullberg were still married at the time of his death. *See Searles v. Searles*, 420 N.W.2d 581, 583 (Minn.1988) ("the law recognizes that spouses have a common ownership interest in property acquired during coverture, regardless of who holds title"); Minn.Stat. § 524.2–402(a), (c) (2000) (homestead descends to surviving spouse free from any testamentary disposition to which surviving spouse has not consented, but subject to claim filed under 256B.15 for medical assistance benefits). Moreover, the homestead was conveyed to Jean Gullberg through some "other arrangement." *See Bonta v. Burke*, 98 Cal. App.4th 788, 120 Cal.Rptr.2d 72, 76 (2002) (recipient, who conveyed homestead to her daughters but retained life estate and right to revoke the remainder, held significant interest in property until her death); *Wirtz*, 607 N.W.2d at 885 (North Dakota Supreme Court recognizes that "other arrangement" language has been interpreted by courts to include community property and homestead interests). We therefore conclude that at the time of his death, Walter Gullberg continued to have some legal interest in the homestead, albeit contingent on any number of factors.[2]

1. "[A]t the time of death" must be construed to mean a point in time immediately before death. Any other reading of this phrase would render the estate recovery statute meaningless because upon death, property immediately passes to beneficiaries. *Cf.* Minn.Stat. § 645.16 (2000) ("Every law shall be construed, if possible, to give effect to all its provisions.").

2. The special concurrence notes that at oral arguments, the estate suggested that if recov-

■ Nonetheless, to the extent that Minnesota's estate recovery statute allows recovery "to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage," we conclude that it goes beyond what is allowed by federal law, which allows recovery only "to the extent of" the individual's legal interest at the time of death. This apparent conflict, however, does not render the state law preempted in its entirety. *See Martin*, 642 N.W.2d at 16. "Preemption of state laws is generally disfavored," and courts will find state laws "preempted only to the extent that they are in conflict with federal law." *Id.* at 11 (citations omitted). Such a "partial" preemption fulfills our obligation to construe statutes to avoid constitutional defects. *Id.* at 18. Thus, we must construe Minn. Stat. § 256B.15, subd. 2 so as to allow it to operate in harmony with the federal law. *See id.*

We therefore conclude that Minn.Stat. § 256B.15, subd. 2 allows claims against a surviving spouse's estate only to the extent of the value of the recipient's interest in marital or jointly owned property at the time of the recipient's death. This construction allows some tracing of assets back through the marriage, but restricts recovery to the value of the recipient's interest in those assets at the time of the recipient's death. *Cf. Wirtz*, 607 N.W.2d at 886 (holding that 42 U.S.C. § 1396p(b) "contemplates only that assets in which the deceased recipient once held an interest will be traced" and that "recovery from a surviving spouse's separately-owned assets * * * or recovery from the surviving spouse's entire estate, including assets not

traceable from the recipient, is not allowed").

Typically, the homestead is the only significant asset subject to estate recovery provisions. *West Virginia v. U.S. Dep't of Health & Human Servs.*, 289 F.3d 281, 284–85 (4th Cir.2002) (because potential Medicaid beneficiaries are required to "spend down" their income and assets before they become eligible for benefits and because the homestead is one of the few assets which is exempt from these spend down provisions, the homestead is typically the only significant asset subject to estate recovery provisions). Thus, allowing a claim like this serves to fulfill the purposes of the Medicaid Act by protecting the surviving spouse's right to enjoy and use assets during his or her lifetime, while enabling the county to recoup a portion of its expenditures and to prevent "capable individuals from using Medicaid as artificially inexpensive long-term care insurance." Jon M. Zieger, *The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery*, 5 Elder L.J. 359, 374–76 (Fall 1997) (noting that 1993 changes in federal law were aimed "both at reducing manipulation [of eligibility provisions] and at giving the state a second chance at the sheltered wealth after the recipient's death" and predicting that because estate recovery "may prove unsettling to members of the middle class," many will "seek out long-term care insurance * * * before the need for it arises and when the product is still financially within reach").

## DECISION

The district court's disallowance of the county's claim is reversed and the matter

---

ery is allowed in this case, then the county would be "fully reimbursed for its claim." This statement was not made in the context of our decision here. The value of Walter Gull-

berg's interest in the homestead at the time of his death is a matter for the district court to determine on remand.

is remanded to determine and reevaluate Walter Gullberg's interest in the homestead at the time of his death. The county's claim is limited to recovering only to the extent of that interest.

**Reversed and remanded.**

MINGE, Judge (concurring specially).

This decision results in partial preemption of the Minnesota law. In addition, the decision limits the long-term ability and flexibility of the state of Minnesota to collect reimbursement for Medical Assistance from those able to pay. Finally, it creates opportunity for estate planning creativity and abuse that would frustrate such collections of Medical Assistance reimbursement in the future.

As the majority opinion in this case recognizes, we should avoid finding federal preemption unless it is clearly required. Section 1396p(b)(4) of title 42 of the federal code was amended in 1993 to both set a higher minimum standard for state efforts to collect reimbursement for Medicaid (in Minnesota the Medicaid program is known as Medical Assistance) and to give the states flexibility to accomplish this. Pub.L. No. 103–66, § 13612(c) (1993). The language in the federal law is admittedly not a model of clarity. To the extent this decision limits the efforts of the state of Minnesota to deal with the unfortunate, but persistent, efforts of some to enhance their final estate by sheltering and divesting assets in order to qualify for Medical Assistance, this decision takes us down the wrong road. That road and federal preemption can be avoided by construing words "estate," "interest," and "other arrangement" in 42 U.S.C. § 1396p(b)(4) (2000) to include any estate, interest, or arrangement that the state by law establishes for purposes of recovery of Medical Assistance (Medicaid) benefits. By this approach, we minimize the endless schem-

ing. The all-together human temptation to take advantage of a generous government program is controversial, brings discredit to estate planning, and breeds cynicism in the larger community. Since I do not agree that the federal law should be read to preempt Minnesota law and preclude an expansive state interpretation of "estate," "interest," or "arrangement," I do not join in the opinion of the court. However, at oral argument the respondent stated that if the state of Minnesota could reach the limited interest attributed to Walter Gullberg as allowed by the majority, the state would be fully reimbursed for its claim. Therefore, I concur in the result.