In re the ESTATE OF Francis E. BARG, a/k/a Francis Edward Barg.

No. A05–2346.

Court of Appeals of Minnesota.

Oct. 17, 2006.

Janice S. Kolb, Mille Lacs County Attorney, Dawn R. Nyhus, Assistant County Attorney, Milaca, MN, for appellant Mille Lacs County.

Thomas J. Meinz, Princeton, MN, for respondent personal representative.

Mike Hatch, Attorney General, Robin Vue–Benson, Assistant Attorney General, St. Paul, MN, for amicus curiae Minnesota Department of Human Services.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and PARKER, Judge.*

## OPINION

LANSING, Judge.

In this appeal from an order for partial recovery of medical benefits paid to Dolores Barg, the estate of Francis Barg challenges the district court's interpretation of Minnesota's estate-recovery statute, Minn.Stat. § 256B.15 (2004). Because we conclude that the determination of the deceased recipient's interest in transferred joint-tenancy property must be based on principles of real-property law as modified by specific provisions of the estate-recovery statute, we reverse and remand for recalculation of Mille Lacs County's allowable claim against the estate.

## FACTS

Dolores and Francis Barg married in 1948. In 1962 and 1967 they acquired title to real property that they held in joint

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

tenancy. In 2001 Dolores Barg's health declined, and she eventually required out-of-home nursing care. To pay for her medical care, she applied for long-term Medicaid benefits. After participating in an asset assessment, Dolores Barg transferred her interest in the jointly held property to Francis Barg. At the time of the transfer, the assessed value of the property was $120,800.

Dolores Barg died in 2004. Between 2001 and 2004, Dolores Barg received a total of $108,413.53 in medical-assistance benefits through the Medicaid program. Five months after Delores Barg's death, Francis Barg died, and his will was admitted to probate. Mille Lacs County filed a claim against the estate to recover the medical-assistance payments made to Dolores Barg. The estate's personal representative allowed $63,880 as a claim against the estate, but disallowed $44,533.53. The county thereafter filed a claim-allowance petition.

At the hearing on the petition, the county contended that it was entitled to full recovery of its claim because the value of the real property exceeded the value of the claim and, as marital property, Dolores Barg was entitled to an undivided interest in its full value. The estate contended that the court should, instead, apply a probate-law analysis that would limit Dolores Barg's interest in the property to a life estate, with a value of $63,880.

Applying probate-law principles, the district court determined that Dolores Barg had a life-estate interest in the property and that the county could not recover the additional $44,533.53. The county appeals from this determination, and the Minnesota Department of Human Services has filed an amicus brief in support of the county's position.

## ISSUE

Did the district court err by applying, for purposes of Minnesota's estate-recovery statute, a probate-law analysis to calculate a medical-assistance recipient's interest in transferred joint-tenancy property that is part of the surviving spouse's estate?

## ANALYSIS

In the district court, Mille Lacs County and Francis Barg's estate jointly submitted a stipulation of facts; on appeal, both acknowledge that the claim against the estate is governed by federal and state statutes. Application of a statute to undisputed facts involves a question of law. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). We review questions of law de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

Medicaid is a cooperative program between states and the federal government in which the federal government provides financial assistance to participating states. *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002). Participating states design their own Medicaid plans and set guidelines for eligibility and participation, but these plans must comply with federal law. *Id.* at 11.

Under Medicaid, a person who is unable to pay the cost of long-term medical care may qualify for medical-assistance benefits. *See Women of State of Minn. by Doe v. Gomez*, 542 N.W.2d 17, 21 (Minn.1995) (stating that Medicaid provides benefits for "medically needy"). If the person has income or assets that exceed the limits for eligibility, the person will not qualify for benefits until the available resources that exceed the eligibility level are expended. *In re Estate of Atkinson v. Minn. Dep't of Human Servs.*, 564 N.W.2d 209, 211 (Minn.1997). Because the "spend down"

requirement has the potential to impose substantial hardship on the spouse of a medical-assistance recipient, Medicaid includes provisions to avoid spousal impoverishment. *Id.* These anti-impoverishment measures preclude certain assets from being considered for eligibility purposes. *Id.* Specifically, in determining eligibility for Medicaid benefits, the value of an individual's home is not considered so long as a spouse or dependent child maintains the home as a primary residence. Minn.Stat. § 256B.056, subd. 2 (2004).

Because the spousal anti-impoverishment measures provide an exemption for a primary residence, this property is typically an asset that is subject to estate-recovery procedures. *In re Estate of Gullberg,* 652 N.W.2d 709, 714 (Minn.App.2002). To reach these assets, Congress amended the Medicaid Act to expand the government's ability to recover from the estates of medical-assistance recipients and to require states to seek this recovery. *See id.* at 712. Although the Medicaid Act does not generally permit the government to recover medical assistance correctly paid on behalf of an individual, the government may seek recovery if one of three exceptions applies. 42 U.S.C. § 1396p(b)(1) (2000). The exception relevant to the Bargs' circumstances applies to individuals who were older than fifty-five when they received medical assistance. *Id.* § 1396p(b)(1)(B). Under this exception, the government may recover "from the individual's estate," but may only seek recovery after the death of the individual's surviving spouse. *Id.* § 1396p(b)(1)(B), (b)(2).

For purposes of recovery, federal law defines an individual's estate as "all real and personal property and other assets included within the individual's estate, as defined for purposes of [s]tate probate law." *Id.* § 1396p(b)(4)(A) (2000). The

federal law, however, permits states to expand the definition of estate beyond the definition found within probate law. *Id.* § 1396p(b)(4)(B) (2000). If the state chooses, it may include "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed ... through joint tenancy ... or other arrangement." *Id.*

Minnesota's estate-recovery statute provides that the state may assert a claim against the estate of a surviving spouse to recoup medical-assistance benefits provided to the predeceased spouse. Minn.Stat. § 256B.15, subd. 1a (2004). The Minnesota statute thus reflects the legislature's exercise of the option to expand the definition of estate to allow claims against the surviving spouse's estate. *Gullberg,* 652 N.W.2d at 713. But Minnesota limits a "claim against the estate of a surviving spouse ... to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage." Minn.Stat. § 256B.15, subd. 2 (2004). Thus, the state may not recover from portions of a surviving spouse's estate that are not traceable to marital or jointly owned property.

In *Gullberg,* 652 N.W.2d at 714, this court determined that Minnesota's statute was partially preempted by federal law. Specifically, the court concluded that Minnesota's estate-recovery statute goes further than permitted by federal law because it permits recovery "to the value of the assets of the estate that were marital property," while the federal law only permits recovery "to the extent of" the individual's interest at the time of death. *Id.* To harmonize federal and state law, *Gullberg* concluded that Minnesota's estate-recovery statute "allows claims against a surviving spouse's estate only to the extent of

the value of the recipient's interest in marital or jointly owned property at the time of the recipient's death." *Id.* Recovery is thus limited to "the value of the recipient's interest in those assets at the time of the recipient's death." *Id.*

Prior to *Gullberg,* the state could recover up to the full value of assets that could be traced back to marital or jointly owned property. *See* Minn.Stat. § 256B.15, subd. 2. After *Gullberg,* the state's ability to recover was limited to the recipient's interest in marital or jointly owned property at the time of the recipient's death. *Gullberg,* 652 N.W.2d at 714. Thus, the state's recovery depends on a determination of the recipient's interest in the specified assets at the time of death.

■ The county and the estate argue that *Gullberg* restricts the definition of the value of the recipient's interest in the estate of the surviving spouse to either probate-law or marital-property-law principles. The county contends that marital-property-law principles should be applied because the estate-recovery statute specifically refers to marital property. The estate counters that a recipient's interest is more appropriately determined by reference to probate law. We conclude that both the county and the estate read too much into *Gullberg*'s passing references to marital and probate law.

■ *Gullberg*'s holding was limited to the narrow issue of preemption. *Id.* at 712, 714. Rather than directly addressing the method for calculating the extent of the recipient's interest in transferred property, the court in *Gullberg* remanded the issue to the district court for determination of the recipient's interest in the assets of the surviving spouse's estate. *Id.* at 714–15. Although the *Gullberg* decision included citations to a marital-property-law case, *Searles v. Searles,* 420 N.W.2d 581 (Minn.1988), and to a probate statute,

Minn.Stat. § 524.2–402(a), (c) (2000), these citations were included merely as support for the precept that a medical-assistance recipient may continue to have some interest in property even after the recipient has transferred the property to a spouse. *Gullberg,* 652 N.W.2d at 713. Notably, *Gullberg* stated that the recipient's transfer of his joint tenancy to his spouse was a conveyance by "other arrangement" and that it would therefore fall within the broader optional state definition of estate. *Id.* Thus the *Gullberg* opinion essentially applied the optional definition of estate, as allowed by federal law, and established that the medical-assistance recipient had *some* interest in the homestead after its conveyance, but the opinion did not address the extent of this interest. *Id.*

We therefore reject the parties' competing arguments that *Gullberg* must be read to require either a probate-law analysis or a marital-property-law analysis when calculating a medical-assistance recipient's interest under the estate-recovery laws. We are not persuaded that either analysis applies, particularly in this case. Analysis under marital-property law would require us to read into the estate-recovery statute a definition from Minn.Stat. § 518.54 (2004), which explicitly restricts its definitions to the context of marital dissolution, and provides that marital property "means property ... acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding." *Id.* § 518.54, subds. 1, 5. We are unable to find a legal basis for incorporating this definition into the estate-recovery statute. *See Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114–17 (Minn.2001) (stating that rules of statutory construction prohibit adding words or meaning to statute when legislature has not).

We are similarly unable to find a legal basis for imposing a probate-law analysis,

which would require the court to apply a retrospective structuring of the medical-assistance recipient's interest in the surviving spouse's estate. This method, which was proposed by the estate and accepted by the district court, results in a life-estate interest that is based on an artificial assumption that the surviving spouse predeceased the recipient instead of the converse. In this case, Francis Barg did not include a provision for his deceased wife and left his interest in his homestead to his children. Under probate-law principles, the court would have to assume that Dolores Barg survived her husband and received a life-estate interest in his property as his surviving spouse.

This probate-law analysis would also conflict with the estate-recovery laws, which require courts to calculate the recipient's interest at the time of the recipient's death rather than on the future date of the spouse's death. The estate-recovery statute specifically provides that a recipient's joint-tenancy interests "shall not be merged into the remainder interest or the interests of the surviving joint tenants" and that the joint-tenancy interests shall be subject to the provisions of the statute. Minn.Stat. § 256B.15, subd. 1(5) (2004); *see also In re Estate of Jobe*, 590 N.W.2d 162, 165 (Minn.App.1999) (stating that statutory language extends definition of estate to include nonprobate assets), *review denied* (Minn. May 26, 1999). Analysis under probate-law principles is also inconsistent with the federal law's expanded definition of estate, which explicitly allows a state to broaden the definition beyond the meaning used in probate law and to include joint-tenancy interests that have been previously conveyed to a spouse. 42 U.S.C. § 1396p(b)(4).

 In light of the problems with the use of either probate-law or marital-property-law principles, we conclude that the plain meaning of the estate-recovery statute requires us to apply property-law principles as specifically modified by the statute. Applying this analysis, a recipient's interest in marital property for purposes of estate recovery is limited to that person's legal interest in the property at the time of death. And, under federal law and *Gullberg,* this interest includes a conveyance of a joint tenancy to a spouse. *See id.* § 1396p(b)(4)(B); *Gullberg,* 652 N.W.2d at 713 (stating that recipient maintains joint-tenancy interest in property even after conveyance to spouse because conveyance constitutes "other arrangement").

 Applying *Gullberg,* the relevant statutes, and the principles of property law to the stipulated facts, we start from the elemental threshold that Dolores Barg had a joint-tenancy interest in the property that is now in Francis Barg's estate and that her interest was acquired during their marriage. Before receiving Medicaid benefits, she conveyed her interest in the property to Francis Barg. For purposes of the estate-recovery statute, Dolores Barg's estate retained a joint-tenancy interest in the homestead at the time of her death. *See* Minn.Stat. § 256B.15, subd. 1(3) (providing for modification of common law principles by allowing continuation of medical-benefit recipient's joint-tenancy interest after recipient's death). The "extent of her interest" is defined by the joint tenancy. A joint tenant's interest in property is an undivided one-half interest in the property's value. *Kipp v. Sweno,* 683 N.W.2d 259, 260, 263 (Minn.2004). Because the stipulated facts state that the joint-tenancy property was valued at $120,800 at the time of Dolores Barg's death, the extent of the value of Dolores Barg's interest at the time of her death was $60,400. We therefore reverse and remand for the district court to recalculate the allowable claim against Francis Barg's estate.

Finally, the Minnesota Department of Human Services filed an amicus brief in this case, supporting the county's position and urging reversal of the district court's decision. The department advances two independent arguments for reversal. First it asserts that *Gullberg*'s discussion of the preemptive effect of the phrase "to the extent of such interest" is dictum and should not be applied. We disagree. The *Gullberg* court did not exceed the scope of review on the preemption issue by relying on a full-text analysis of the federal act. The language of the opinion and the stated issue in the case establish that *Gullberg* squarely addresses preemption and reaches a conclusion on this issue, which became the holding of the case. *Gullberg*, 652 N.W.2d at 712, 714.

Second, the department urges this court to reverse *Gullberg* based on the department's "more complete discussion" of the preemption issue in its amicus brief. The amicus brief provides a thoughtful and comprehensive analysis of the preemption question. But that issue was decided in *Gullberg*, and nothing in *Gullberg*'s analysis suggests that the court did not consider the full spectrum of applicable law and competing policy considerations in its determination of the preemption issue. We therefore decline to reverse *Gullberg*.

## DECISION

For purposes of obtaining reimbursement under Minnesota's estate-recovery statute, Mille Lacs County is entitled to a claim against Francis Barg's estate for Dolores Barg's one-half interest in the joint-tenancy property obtained during the marriage and transferred to Francis Barg. Because the district court erred by applying a probate-law method of calculation, we reverse and remand for a recalculation of the allowance based on principles of real property as modified by specific provisions of the estate-recovery statutes.

**Reversed and remanded.**