Filed 1/10/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RIVERSIDE COUNTY PUBLIC GUARDIAN, as Trustee, etc.,<br>    Plaintiff and Respondent,<br><br>v.<br><br>SHAWNA SNUKST,<br>    Defendant and Respondent;<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,<br>    Claimant and Appellant. | E074949<br><br>(Super.Ct.No. RIP1500200)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Thomas H. Cahraman, Judge. Reversed and remanded with directions.

Xavier Becerra and Rob Bonta, Attorneys General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Jennifer G. Perkell and Hadara R. Stanton, Deputy Attorneys General, for Claimant and Appellant.

No appearance for Plaintiff and Respondent.

Law Office of Armand Tinkerian and Armand Tinkerian for Defendant and Respondent.

## I.  INTRODUCTION

The Medi-Cal program (Welf. & Inst. Code, § 14000 et seq.) is California's enactment of the federal Medicaid program.  (42 U.S.C. § 1396 et seq.)[1]  The Medicaid program was designed to provide health care services to qualified indigent persons.  The California Department of Health Care Services (the department) administers the Medi-Cal program.  (Welf. & Inst. Code, § 14203; *Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 751.)  For a person older than 55 years of age, financial eligibility for Medi-Cal benefits is calculated without including the value of his or her principal residence.  However, after the person's death, federal law requires the department to seek reimbursement for any Medi-Cal benefits provided during the decedent's lifetime from his or her estate or recipients of the decedent's property by distribution or survival.  (Welf. & Inst. Code, § 14009.5, subd. (a).)  The reimbursement requirement is subject to several exemptions or hardship waivers.  (*Ibid*.)

---

[1] The Medicaid and Medicare programs were signed into law in 1965 and are authorized by title XIX of the Social Security Act.  (42 U.S.C. § 1396 et seq.; see https://www.medicaid.gov/about-us/program-history/index.html [as of Jan 10, 2022].)

In this case, the department sought reimbursement from a revocable inter vivos trust for the Medi-Cal benefits provided on behalf of Joseph Snukst during his lifetime. Following his death, the probate court ordered the assets in the revocable inter vivos trust to be distributed to the sole beneficiary, Shawna Snukst, rather than to the department. We conclude federal and state law governing revocable inter vivos trusts, as well as public policy, require that the department be reimbursed from the trust before any distribution to its beneficiary. We, therefore, reverse and remand.

## II. PROCEDURAL BACKGROUND AND FACTS

In November 2009, Joseph[2] moved into a senior care facility in Riverside; he was diagnosed with dementia. On August 27, 2015, the Riverside County Public Guardian was appointed conservator of Joseph's person and estate. Joseph died on July 29, 2016. From August 27, 2013, through July 29, 2016, Joseph was a Medi-Cal beneficiary. During that period, the department paid $480,465.52 for Joseph's health care services.

Twelve years before his death, on or about March 14, 2004, Joseph purchased an annuity. Two days later, by a declaration of trust dated March 16, 2004, Joseph created a revocable inter vivos trust (the trust) and designated the trust as the pay-on-death

---

[2] We refer to Joseph and Shawna Snukst by their first names to avoid confusion. We mean no disrespect in doing so. (*Estate of O'Connor* (2018) 26 Cal.App.5th 871, 875, fn. 2.)

3

beneficiary of his annuity.[3]  The trust designated Joseph's niece, Shawna, as its sole beneficiary.  When Joseph died, the trust received $804,456.13 from his annuity.

On September 21, 2016, the public guardian notified the department of Joseph's death.  On November 28, the department presented a creditor's claim in the amount of $480,465.52, to the public guardian for reimbursement of Medi-Cal benefits Joseph had received.  In the first and final account filed on August 10, 2017, the public guardian requested authority to pay $480,465.52 to the department.  The probate court denied the request, finding that the annuity ceased to be a conservatorship asset upon Joseph's death and became an asset of the trust.  According to the probate court, the trust "is the primary beneficiary of the annuity.  No order under Probate Code section 2580 was made to change the beneficiary.  Therefore, the annuity ceased to be a conservatorship asset upon the death of the conservatee and became an asset of the [trust] dated March 15, 2004.  Consequently, the conservator has no authority to use the funds from this annuity to pay the [department's] claim."  The court added, "Even if the conservator had authority to access these funds, the conservator would have no statutory duty to use the funds to pay this debt of the conservatee's estate.  This was not a debt that became payable during the conservatee's lifetime, but rather was a creditor's claim that arose upon his death.  Compare Probate Code section 2430 and Probate Code section 9000.  Although Probate Code 2631(a) would permit this payment to be made (if the annuity or other sufficient

---

[3]  It appears that another trust, the Joseph Snuskst Irrevocable Trust, was created on May 22, 2014, after he was diagnosed with dementia.  However, a copy of this trust is not included in the record.

resources were available in the conservatorship estate), it would be discretionary and not mandatory."

By the probate court's order on September 26, 2018, the public guardian filed an amendment to the first and final account, which eliminated the annuity as an asset of the estate and removed the request for payment of the department's claim. The amendment was approved on February 7, 2019. On April 3, 2019, the public guardian filed the successor trustee's first and final account for the trust, requesting authority to distribute the remaining funds in the trust to Shawna and an order that the trust be terminated after the funds have been distributed.

The department objected to the trustee's accounting. It challenged the "court's finding that there is no authority to use the annuity funds to pay the Department's creditor claim" because "Welfare and Institutions Code section 14009.5" authorizes such recovery. According to the department, "[s]uch recovery includes assets that pass through 'joint tenancy, tenancy in common, survivorship, life estate, living trust, annuities purchased on or after September 1, 2004, life insurance policy that names the estate as the beneficiary or reverts to the estate, or any retirement account that . . . names the estate as the beneficiary or reverts to the estate.' (Cal. Code of Regs., tit. 22, § 50960.12(a); 42 U.S.C. § 1396p(b)(4)(A)-(B).)"[4] The department argued that "[s]ince

---

[4] Title 42 United States Code section 1396p, subdivision (b)(4), provides: "For purposes of this subsection, the term 'estate,' with respect to a deceased individual—
"(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

*[footnote continued on next page]*

5

the [trust] was a revocable living trust (see Article 1, p. 1), the department is entitled to reimbursement . . . of $480,465.52 from [the trust]." The public guardian offered no opposition to reimbursing the department. The probate court ordered notice be sent to Shawna, "explaining that if the Court approved the reimbursement claim of [the department], her distribution would be reduced by that amount."

On August 6, 2019, the public guardian filed another amended accounting, which included a request to pay the department's claim. The probate court set a hearing and requested briefing on the issue. Both the department and Shawna briefed the issue. On February 24, 2020, the probate court denied the public guardian's request to pay the department's claim; no explanation was provided.

## III. DISCUSSION

The department contends the probate court failed to comply with federal and state law by denying its claim for reimbursement for the Medi-Cal benefits that Joseph had received. We agree.

"California participates in the federal Medicaid program and must comply with the Medicaid Act in exchange for federal contributions to the cost of care provided to needy individuals. [Citation.] The Medicaid Act provides that applicants may qualify for Medicaid benefits if they are aged, blind, or disabled and their income and resources are

---

"(B) may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement."

insufficient to meet the costs of health care. [Citation.] If the applicant is over the age of 55, his or her principal residence is excluded when determining eligibility. This allows elderly applicants, despite having a valuable asset, to qualify for Medicaid covered services. [Citation.] In exchange, federal law requires that the state recover all or a portion of the Medicaid benefits paid during the recipient's lifetime from his or her estate at death. [Citations.] [¶] In compliance with federal law, state law also requires the [state] to seek reimbursement from the deceased recipient's estate or from recipients of property from the decedent by distribution or survival. [Citation.] This requirement is expressed in mandatory terms. Property once held by the decedent and transferred to heirs by a trust is part of the decedent's estate and is subject to recovery under the same statute." (*Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 353-354; see *Belshé v. Hope* (1995) 33 Cal.App.4th 161, 164.)

Here, the probate court failed to provide its reasons for denying payment of the department's claim. Nonetheless, its prior order—which denied the same claim— explained that the conservator had no authority to use the funds from the annuity because it was a noncash asset, which ceased to be a conservatorship asset upon Joseph's death and became an asset of the trust. However, the public guardian was both the conservator of Joseph's estate and the trustee of the trust. Whether acting as the conservator or trustee, the public guardian notified the department of Joseph's death. Probate Code section 19000 et seq. "governs claims procedures, including notice requirements and time limitations, for revocable trusts of deceased settlors." (*Wagner v. Wagner* (2008)

162 Cal.App.4th 249, 254; see Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2021) ¶ 2:117.2 et seq., p. 2-96 et seq.)

Formally, the trustee "'may file with the court a proposed notice to creditors' in order to obtain a case number and then publish and serve notice to creditors or potential claimants as provided in [Probate Code] section 19040 and the subsequent sections of the Probate Code. . . ." (*Wagner v. Wagner*, *supra*, 162 Cal.App.4th at p. 254.) However, a "trustee is not required to utilize this formal claims procedure and, as an alternative, may proceed informally in administering a decedent's trust . . . ." (*Id*. at p. 255.) Probate Code section 19202, in relevant part, provides: "(a) If the trustee knows or has reason to believe that the deceased settlor received health care under [Medi-Cal], the trustee shall give the [department] notice of the death of the deceased settlor . . . in the manner provided in Section 215" by mailing or personally delivering such notice, including a copy of the death certificate, to the department at its Sacramento office within 90 days after the death. (Prob. Code, § 215.) Here, because the public guardian was Joseph's conservator, the public guardian knew that he had received Medi-Cal benefits and, accordingly, provided notice of his death to the department.

Upon receiving notice of Joseph's death, the department submitted its claim for reimbursement for Medi-Cal benefits provided to Joseph. Joseph's primary asset was the annuity, which was paid to the trust upon his death. Shawna is the sole beneficiary of the trust. Property once held by the decedent and transferred to heirs by way of a revocable inter vivos trust is part of the decedent's estate and is subject to recovery under Welfare

and Institutions Code section 14009.5.[5]  (*Belshé v. Hope*, *supra*, 33 Cal.App.4th at p. 164.)  According to federal law, the term "'estate,'" with respect to a deceased individual, includes "(A) . . . all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and [¶] (B) may include, at the option of the State . . . any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, *living trust*, or other arrangement."  (42 U.S.C. § 1396p(b)(4)(A)-(B), italics added.)

"California utilizes the federal definition of 'estate.'  The regulations for the Medi-Cal estate recovery program define 'estate' as 'all real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including *assets conveyed to a* dependent, survivor, *heir* or assignee of the deceased individual *through* joint tenancy, tenancy in common, survivorship, life estate, *living trust*, or other arrangement.'"  (*Bonta v. Burke* (2002) 98 Cal.App.4th 788, 790-791 (*Bonta*), italics added, quoting former Cal. Code Regs., tit. 22, § 50960, subd. (b)(1).)  "The inclusion of the catchall 'or other arrangement'

---

[5]  Welfare & Institutions Code section 14009.5 was amended in 2016 to limit estate recovery for individuals who die on or after January 1, 2017.  (Stats. 2016, ch. 30, § 22; Welf. & Inst. Code, § 14009.5, subd. (g) ["The amendments made to this section by the act that added this subdivision shall apply only to individuals who die on or after January 1, 2017."].)  Because Joseph died on July 29, 2016, the former version of section 14009.5 applies.  (Stats. 1995, ch. 548, § 2.)

suggests that Congress intended the definition to be as all-inclusive as possible." (*Bonta*, at p. 793; see *Belshé v. Hope*, *supra*, 33 Cal.App.4th at pp. 173-174, 175 ["We find Congress intended the term 'estate' to have a broad meaning. By including probate and nonprobate transfers on death in the estate, the purposes of [Medicaid] will be better achieved and the broad definition will ensure that assets of a recipient are used for the cost of care rather than given away."].)

Despite the above authorities, Shawna contends the department was not "entitled to proceeds from the Beneficiary's share of her uncle's *inter vivos* Trust." In support of this contention, she cites *Citizens Action League v. Kizer* (9th Cir. 1989) 887 F.2d 1003, 1006-1008 (noting that the term "estate," before Oct. 1, 1993, was limited to the common law definition such that property passing to a joint tenant by right of survivorship was not part of a decedent's estate under the Medicaid program) and *Bucholtz v. Belshe* (9th Cir. 1997) 114 F.3d 923, 925-926 (same, as to property passing to a beneficiary by way of a revocable inter vivos trust). However, these federal cases "turned on an assessment of congressional intent in the absence of an express definition of estate. Congress has now provided a definition and California has incorporated it into its recovery program." (*Bonta*, *supra*, 98 Cal.App.4th at p. 792; see Cal. Code Regs., tit. 22, § 50960.12, subd. (a) ["For individuals who die on or after October 1, 1993, and for payments made on or after October 1, 1993, 'estate' is defined as all real and personal property and other assets in which the decedent had any legal title or interest at the time of death (to the extent of such interest), including assets conveyed to a dependent, heir, survivor, or assignee of the decedent through joint tenancy, tenancy in common, survivorship, life estate, living trust,

10

annuities purchased on or after September 1, 2004, life insurance policy that names the estate as the beneficiary or reverts to the estate, or any retirement account that names the estate as the beneficiary or reverts to the estate."].) Because the cases cited by Shawna are based on an outdated definition of "estate," they are no longer persuasive.

Notwithstanding *ante*, Shawna argues that the department's claim "does not reach to or apply to the *inter vivos* trust" because it is against Joseph's probate estate that "does not reach to or apply to the decedent's *inter vivos* trust." She cites *Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324. However, *Arluk* did not address a Medi-Cal reimbursement claim and, therefore, does not stand for the proposition she advances. Rather, the *Arluk* court concluded that the trustee of a revocable living trust has no duty, following the death of the settlor, to preserve trust assets for the benefit of creditors with claims pending against the deceased settlor's probate estate. (*Arluk*, at pp. 1328, 1341.) As we previously noted, the public guardian acted as both conservator of Joseph's estate and trustee of the trust. Regardless of which "hat" the public guardian was wearing, notice of Joseph's death was provided to the department, which timely submitted a claim against the estate, and Joseph's estate included "assets conveyed to a[n] . . . heir . . . through . . . *living trust* . . . ." (42 U.S.C. § 1396p(b)(4)(B), italics added; see Cal. Code Regs., tit. 22 § 50960.12, subd. (a).)

Finally, Shawna asserts that the department is not entitled to be reimbursed because Joseph's application for Medi-Cal benefits is not valid,[6] and there is insufficient

---

[6] Joseph's application for Medi-Cal benefits is not included in the record.

11

evidence of the medical services provided to him.[7]  Since the probate court incorrectly concluded that the assets in the trust were not available to reimburse the department for Joseph's Medi-Cal benefits, the court never decided the validity of his application or the sufficiency of the evidence of the medical services provided.  These are factual issues to be determined by the probate court.  (Cf. *Raisola v. Flower St.* (1988) 205 Cal.App.3d 1004, 1009.)  Because we are reversing and remanding the matter to the probate court, it may consider these factual issues on remand in the first instance.[8]

To summarize, the department is required to seek recovery of Medi-Cal benefits provided to Joseph before his death (Welf. & Inst. Code, § 14009.5, subd. (a)), and property once held by Joseph and transferred to Shawna as part of the trust is subject to such recovery.  (*Belshé v. Hope*, *supra*, 33 Cal.App.4th at pp. 173-175.)  Moreover, as a public policy matter, "allowing the State to recover as much as possible of the costs of medical services provided to low-income persons furthers the purpose of the Medicaid and Medi-Cal programs.  The recovered costs replenish the program and allow 'the state to . . . provide future services.'"  (*Bonta*, *supra*, 98 Cal.App.4th at pp. 793.)  The

---

[7]  She does not claim any statutory exemptions or waivers.  (Welf. & Inst. Code, § 14009.5.)  She also does not dispute any of the following facts:  (1) Joseph received Medi-Cal benefits; (2) he left no surviving spouse or child whose entitlement to his estate would take precedence; (3) there was no hardship exemption; (4) there were sufficient assets in his estate to cover the department's claim; and (5) the claim was timely and properly submitted.

[8]  We express no opinion on these factual issues or the trust's explicit direction that its assets are to be distributed to Shawna *after* "providing for the payment of any debts, taxes, and administration and other expenses."

department, therefore, is entitled to recover from Joseph's estate or the beneficiary of the trust—Shawna—the cost of the Medi-Cal benefits provided to him before his death.

## IV.  DISPOSITION

We reverse the probate court's order approving the first and final account of the trust and remand with directions that the probate court consider the matter in accordance with the views expressed in this opinion.  The department shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION

McKINSTER

Acting P. J.

We concur:


CODRINGTON

J.


RAPHAEL

J.