In the ESTATE OF Charles A. PARKER, Deceased.

Ray Parker, Susan Green and Mary Wright, Appellants,

v.

Rosa Parker and Carroll G. Leffler, Administrator D.B.N., Respondents.

No. WD 57838.

Missouri Court of Appeals, Western District.

Aug. 22, 2000.

John H. Edmiston, Warrensburg, for Appellants.

Bruce A. Bailey, Warrensburg, for Respondent Rosa Parker.

Carroll G. Leffler, Warrensburg, for Respondent.

Before: HOWARD, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

VICTOR C. HOWARD, Presiding Judge.

Ray Parker, Susan Green and Mary Wright ("appellants") filed a petition for discovery of assets, § 473.340 RSMo 1994,[1] which they believed should have been included in their father's estate. One asset they sought to pull into his estate was a manufactured or mobile home ("mobile home"). The probate division of the Johnson County Circuit Court found, among other things, that the mobile home at issue remained the personal property of respondent Rosa Parker, appellants' father's wife. The court reasoned that the mobile home had not been properly converted to real property according to the provisions of § 700.111.1 RSMo 1994. Thus, the mobile home was not an estate asset of appellants' deceased father. Appellants now appeal from that portion of the judgment relating to the mobile home.

For the reasons set forth below, we affirm the probate court's judgment.

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

## Facts

Charles A. Parker ("Charles") died intestate on May 23, 1997. His wife, Rosa Parker ("Rosa"), and three children, appellants Ray Parker, Susan Green and Mary Wright, survived him. On July 23, 1997, acting as the administrator of Charles' estate, Rosa filed an "Inventory and Appraisement" as required by § 473.233 RSMo Supp.1997. This inventory listed numerous items of personal property as assets of the estate of Charles. The inventory did not include a 1992 Atlanta mobile home, VIN 4797155N2535AB.

On January 14, 1999, appellants filed their "Second Amended Petition for Discovery of Assets" against respondents, Rosa Parker and Carroll G. Leffler.[2] Appellants alleged, among other things, that Charles' estate was the rightful owner of the 1992 mobile home, and respondents had adversely withheld such property from Charles' estate. They further alleged that Charles' estate was entitled to the mobile home and the fair rental value of such mobile home from the date of Charles' death, May 23, 1997, to the present time. Respondents denied appellants' allegations concerning the mobile home.

On June 25, 1999, appellants' cause of action was tried to the court.[3] To expedite matters relating to the mobile home, the parties submitted that portion of the case on the following stipulation of facts:

1. Charles A. Parker and Rosa Parker were married on the 21st day of November, 1991.

2. Thereafter, and on the 17th day of December, 1991, Charles A. Parker and Rosa Parker purchased a 1992 mobile home. The certificate of title evidencing ownership as originally purchased is not available for presentation to the court. However, and [sic] after Mr. Parker's death,

Rosa Parker obtained Missouri certificate of title No. AZ511218 reflecting ownership of such mobile home in her name alone.

3. The aforementioned mobile home was placed upon real estate owned solely by Charles A. Parker.

4. The aforementioned mobile home has had its axles and wheels removed and has been placed upon a permanent cinder block foundation. Further, a screened in porch has been added to the north side of the mobile home. The roof line for the screened in porch and the mobile home are flush. The photographs depicted in the exhibit No. 1 are true and correct representations of how such mobile home appears.

5. At the time of its purchase, Charles A. Parker and Rosa Parker intended to affix the mobile home to the property owned by Charles A. Parker.

6. Charles A. Parker and Rosa Parker intended for this mobile home to be their permanent residence.

7. That at the time of its purchase, Charles A. Parker and Rosa Parker intended the affixing of such mobile home to the real estate to be permanent.

8. The funds used to purchase the mobile home came solely from money Mr. Parker had prior to his marriage to Rosa Parker.

9. Rosa Parker has continued to reside in such mobile home since the date of Charles A. Parker's death on the [sic] May 23, 1997.

10. That at no time since the purchase of such mobile home have either Charles A. Parker or Rosa Parker done anything to attempt to remove such mobile home from the

---

**2.** After appellants filed their petition, Mr. Leffler replaced Ms. Parker as "Administrator D.B.N." of Charles' estate.

**3.** Appellants dispute only the court's decision concerning the mobile home. Thus, we do not address the judgment as it relates to other property at issue in appellants' action for discovery of assets.

property w[h]ere it has been affixed since its purchase.

The probate judge found: that the mobile home Rosa and Charles purchased as joint tenants was a "manufactured home" as defined in § 700.010(5) RSMo Supp. 1999; that the mobile home remained the personal property of Charles and Rosa unless thereafter converted to real property pursuant to § 700.111.1; that the mobile home was placed on real estate owned solely by Charles; and that Charles and Rosa removed the axles and wheels, placed the mobile home upon a permanent cinder block foundation, and took other steps intended to permanently place the mobile home on Charles' real estate. Nonetheless, the court held that the mobile home was not properly converted to real property under § 700.111. The court reasoned that "notwithstanding the other actions of the parties," the mobile home was not "situated on real estate *owned by the manufactured home owner*" as required by § 700.111.1. (Emphasis added.) Because Rosa Parker was not the owner of the real estate upon which the mobile home she and Charles owned was placed, conversion of the mobile home to real property did not occur. As a result, the court held that the mobile home remains the personal property of Rosa as the surviving joint owner, and it is not an asset of Charles' estate. This appeal followed.

### Point I

The issue in this case is whether § 700.111 abrogated the common law thereby becoming the sole means by which a mobile home may be converted to real property.

### Standard of Review

■ *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) governs the standard of review in court-tried cases. "Because the parties have stipulated to the facts, the only question before the Court is [generally] whether the [probate] court drew the proper legal conclusion from the facts."

*Perry State Bank v. Farmers Alliance Mut. Ins. Co.,* 953 S.W.2d 155, 157 (Mo. App. W.D.1997).

■ However, this case involves interpretation of § 700.111, which is a question of law. "[Q]uestions of law fall within this court's province of independent review and correction." *Barry Service Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo. App. W.D.1995). In construing a statute, this court strives to determine the legislature's intent from the language used and to give effect to that intent. "[W]e first give the words used their plain and ordinary meaning, and we construe together provisions of the entire legislative act, trying to harmonize all of the provisions, if reasonably possible." *Thoroughbred Ford, Inc. v. Ford Motor Co.,* 908 S.W.2d 719, 729 (Mo.App. E.D.1995).

■ In determining the status of the common law on the issue before us, we follow the general principle that unless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid. *N.E. & R. Partnership v. Stone,* 745 S.W.2d 266, 267–68 (Mo.App. S.D.1988). Simply because a statute conflicts with the common law does not make the statute invalid. *See Overcast v. Billings Mutual Ins. Co.,* 11 S.W.3d 62, 69 (Mo. banc 2000) (citing § 1.010 in discussing whether § 375.420 preempted common law tort remedies). Section 1.010 states that:

[N]o act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the laws of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed so as to effectuate the true intent and meaning thereof.

Nonetheless, we strictly construe a statute when existing common law rights are affected, and if a close question exists, we

weigh our decision in favor of retaining the common law. *Overcast*, 11 S.W.3d at 69.

### Conversion of a Mobile Home to Real Property

■ A person converts his mobile home from personal to real property by causing the mobile home to become a fixture. *Cattoor v. Wells*, 641 S.W.2d 492, 494 (Mo.App. E.D.1982) (applying the common law conversion factors to find that the mobile home remained personal property because the mobile home was bought in 1972, prior to enactment of § 700.110 RSMo 1976, see discussion *infra*). " 'A fixture is an article of the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land.' " *Id.* (quoting *Bastas v. McCurdy*, 266 S.W.2d 49, 51 (Mo.App.1954)).

■ Under the common law, "[t]he elements of a fixture are annexation to the realty, adaptation to the location, and intent of the annexor." *Cattoor*, 641 S.W.2d at 494. Section 700.111, titled "Conversion of manufactured home to real property, procedure—conversion prohibits other classification by political subdivision," states:

1. The owner of a manufactured home may convert the manufactured home to real property by:

(1) Attaching the manufactured home to a permanent foundation situated on real estate owned by the manufactured home owner; and

(2) The removal or modification of the transporting apparatus including but not limited to wheels, axles and hitches rendering it impractical to reconvert the real property thus created to a manufactured home.

Comparing this method of statutory conversion to the common law, we see that the legislature retained the common law elements of annexation to the realty, subsection (1), and adaptation to the location,

subsection (2). However, the common law element concerning the annexor's intent does not appear in the statute. In its place is the statutory element requiring the annexation be to real estate owned by the mobile home owner.

■ Appellants argue that the mobile home was a fixture which had been intentionally attached or permanently annexed to the real estate according to the common law. They assert that § 700.111's use of the word "may" in setting forth the method for conversion of a mobile home to real property necessarily means that it is not the sole method for doing so. Appellants contend that the common law elements of a fixture are still a means whereby a mobile home may be converted to real property, because the legislature did not intend for § 700.111 to abrogate the common law.

Respondents concede that the mobile home in question was attached to a permanent foundation and that the transporting mechanisms were removed. Nevertheless, they argue that the probate court correctly held that § 700.111 abrogated the common law. They assert the statute's elements make it clear that the annexor's intent is no longer relevant, and the mobile home must be placed upon property owned by the mobile home owner as a prerequisite to conversion.

Chapter 700 of the Missouri Revised Statutes pertains to mobile homes. In 1976, the Missouri legislature enacted § 700.110 RSMo Supp.1976, allowing a mobile home owner to convert his mobile home to real estate by attaching the home to a permanent foundation, by destroying or modifying the vehicular frame "rendering it impractical to reconvert the real property thus created to a mobile home," and by taking the necessary steps to protect any secured party in the event of conversion of the home from personal property to real estate. Section 700.110 RSMo Supp.1976 was repealed by the Missouri legislature in 1989. H.R. 181 & 633 § A, 85th Leg., 1st Reg. Sess. (Mo.1989). Two years later, in 1991, § 700.111 was enacted in the same form as it reads today.

We first consider appellants' argument that the statute's use of the word "may" indicates a legislative intent that the statute merely supplement the common law by setting forth an additional way to convert a mobile home to real property. We reject that argument. "Use of the word 'may' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power." *State ex rel. Nixon v. Boone,* 927 S.W.2d 892, 897 (Mo.App. W.D. 1996). In this case, the conferee is the mobile home owner. As used in § 700.111.1, "may" is followed by the requirements for conversion of the mobile home to real property. Thus, the mobile home owner has two alternatives – he may either convert his mobile home to real property according to the statute or he may retain the mobile home as his personal property. *See, e.g., John W. Meara & Co. v. George,* 774 S.W.2d 552, 554 (Mo. App. W.D.1989) (construing the use of the term "may" in § 512.180 RSMo Supp.1988, to grant a litigant the right to either appeal or not to appeal).

We next take into account subsection two of § 700.111. Section 700.111.2 dictates that if a mobile home is successfully converted under subsection one of the statute, the conversion "*shall* prohibit any political subdivision of this state from declaring or treating that manufactured home as other than real property." Therefore, a political subdivision cannot use the common law elements or any other test to defeat a mobile home owner's conversion of his mobile home to real property under the statute. We believe that the legislature's express direction that the common law elements cannot be used to *defeat* conversion of the mobile home to real property according to the statute necessarily implies that the common law cannot be used by a mobile home owner to *establish* conversion. To hold otherwise would lead to irrational results. For example, if a mobile home owner sought to legally *establish* conversion of his mobile home to real property, and the statute is found not to abrogate the common law elements of conversion, the court would be required to consider his intent and could establish conversion despite the fact that the mobile home was not placed on property owned by the mobile home owner. Conversely, if a political subdivision wanted to *defeat* the homeowner's claim by showing lack of intention under the common law, it would be prohibited from doing so by § 700.111.2. The legislature could not have intended such a result.

Finally, in reviewing our statutes, we also consider that there is another statute that deals with the status of a mobile home being classified as personal property or real property. Section 137.115.6, relating to assessment of levy and property taxes, states in relevant part, "[a] manufactured home located in a manufactured home rental park, rental community, or *on real estate not owned by the manufactured home owner* shall be considered personal property. A manufactured home *located on real estate owned by the manufactured home owner* may be considered real property." (Emphasis added.) We believe that this statute's emphasis on whether the mobile home is placed on real estate owned by the mobile home owner as determinative of how it may be treated for property tax purposes also evidences the legislature's intent to abrogate the common law conversion elements in favor of the elements set forth in § 700.111.

### Conclusion

By necessary implication, § 700.111's conversion elements abrogate the common law elements of conversion of a mobile home to real property. The probate judge did not err in finding the mobile home was not an asset of Charles' estate, so we affirm the judgment.

ELLIS and LAURA DENVIR STITH, JJ., concur.