**In re the ESTATE OF Orville BRUCE.**

**No. WD 68051.**

Missouri Court of Appeals,
Western District.

May 13, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2008.

Application for Transfer Denied
Aug. 26, 2008.

William Lee Hubbard, Kansas City, MO., for appellant.

Lawrence D. Love, Kansas City, MO., for respondent.

PAUL M. SPINDEN, Presiding Judge.

The Estate of Orville Bruce appeals the circuit court's judgment for the State in its claim against the estate for reimbursement of Medicaid payments made to Orville Bruce's deceased wife, Minnie. The State asserted a right to the reimbursement pursuant to Section 473.399, RSMo 2000. The estate responded that federal law, 42 U.S.C. Section 1396p, preempts reimbursement under Section 473.399. We agree and reverse the circuit court's judgment for the State.

Minnie Bruce received Medicaid benefits from October 1990 until she died on February 28, 2002. No probate estate was administered for her. On April 17, 2005, Orville Bruce died. He never received Medicaid benefits. His estate consisted of a house and an automobile. Bruce had owned the house jointly with his wife as tenants by the entirety. His estate was liquidated to $97,000. Pursuant to Section 473.399, the State sought $150,528.63 from the estate for reimbursement of the Medicaid payments to Minnie Bruce. The circuit court granted the State's claim.

∎ In its only point on appeal, Bruce's estate asserts that the circuit court erred because, although Section 473.399 permits the State to seek reimbursement from a spouse's estate, the United States Congress enacted Section 1396p that forbids such a claim. The estate argues that the federal statute preempts enforcement of Section 473.399 pursuant to the United States Constitution's supremacy clause.[1] This clause says that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Federal law preempts state law in three situations: (1) express preemption, when a federal directive expressly declares that the federal law preempts state law, (2) implied field preemption, when "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," and (3) conflict preemption, when "compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jensen v. Missouri Department of Health and Senior Services*, 186 S.W.3d 857, 860 (Mo.App. 2006).

∎ Medicaid is a cooperative federal—state program designed to assist the states in providing health care to people

---

1. Although the parties did not raise an issue concerning jurisdiction, we have a duty *sua sponte* to address issues of our jurisdiction. *State v. Miller*, 172 S.W.3d 838, 843 (Mo.App. 2005). Article V, Section 3, of Missouri's constitution, grants the Supreme Court "exclusive appellate jurisdiction in all cases involving the validity of a treaty or statute of the United States, or of a statute or provision of the constitution of this state[.]" This provision gives the Supreme Court exclusive jurisdiction over the constitutional validity of a state statute. *Miller*, 172 S.W.3d at 843. Hence, if the issue of preemption created a question concerning the statute's validity, we would not have jurisdiction to address the issue. Preemption, however, does not concern the statute's validity. It merely presents an issue of whether or not a statute must yield to the dictates of a federal directive by virtue of the United States Constitution's supremacy clause. Because, in reviewing a preemption challenge, we do not determine whether or not a state statute is unconstitutional, we have jurisdiction to review Bruce's claim. This position is consistent with numerous appellate court decisions that have decided preemption cases. *See e.g., Jensen v. Mo. Dep't of Health & Senior Servs.*, 186 S.W.3d 857 (Mo. App.2006); *City of Belton v. Smoky Hill Ry. & Historical Soc'y, Inc.*, 170 S.W.3d 429 (Mo. App.2005).

who cannot afford it. *McNeil—Terry v. Roling*, 142 S.W.3d 828, 833 (Mo.App. 2004). If a state opts to participate in the program, it must comply with all federal statutory and regulatory requirements. *Id.* Because Medicaid is a cooperative program, it is not susceptible to express or implied field preemption. It is susceptible only to conflict preemption. *Jensen*, 186 S.W.3d at 860–61.

Missouri has opted to participate in the Medicaid program. *Gee v. Department of Social Services, Family Support Division*, 189 S.W.3d 621, 623 (Mo.App.2006). In Section 473.398 and 473.399, RSMo 2000, the General Assembly authorized Missouri's Medicaid authorities to obtain reimbursement from a recipient's estate after the recipient's death or from the estate of the recipient's spouse after the spouse's death. Section 473.399.2 says:

> For the purposes of this section, the providing of assistance shall create an obligation which may be recovered by filing a claim in the probate division of the circuit court against the decedent estate of the spouse of the deceased recipient upon such spouse's death as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo. The amount of the state debt shall be the full amount of assistance without interest provided to the recipient during the marriage of such recipient and spouse; provided that the liability of the obligor estate shall not exceed the value of the combined resources of the recipient and the spouse of the recipient on the date of death of the recipient.

Orville Bruce's estate asserts that Section 473.399, which clearly authorizes spousal recovery, conflicts with 42 U.S.C. Section 1396p, which clearly prohibits it in this case.

■ When interpreting a statute, the judiciary's primary task is to ascertain legislative intent. The preferred means for doing this is to accord the statute's language its plain and ordinary meaning. *Cline v. Teasdale*, 142 S.W.3d 215, 222 (Mo.App.2004).

Section 1396p(b) says:

Adjustment or recovery of medical assistance correctly paid under a State plan

(1) *No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made*, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan

A. In the case of an individual described in subsection (a)(1)(B) of this section, the State shall seek adjustment or recovery from the individual's estate or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of the individual.

B. In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of—(i) nursing facility services, home and community—based services, and related hospital and prescription drug services, or (ii) at the option of the State, any items or services under the State plan.

C. (i) In the case of an individual who has received (or is entitled to receive) benefits under a long—term care insurance policy in connection with which assets or resources are disregarded in the manner described in clause (ii), except as provided in such clause, the State shall seek ad-

justment or recovery from the individual's estate on account of medical assistance paid on behalf of the individual for nursing facility and other long—term care services[.] [2]

In Section 1396p(b), the United States Congress plainly restricts recovery of Medicaid benefits from a recipient's estate to three specific situations, and none authorizes a state to seek recovery from the recipient's spouse. Because Congress has mentioned these three situations expressly, we infer that it intended to exclude recovery in other situations. *Groh v. Ballard*, 965 S.W.2d 872, 874 (Mo.App.1998). *See also In re the Estate of Budney*, 197 Wis.2d 948, 541 N.W.2d 245, 246 (App. 1995) ("[Section 1396p(b)] does not counter the initial blanket prohibition by specifically authorizing a State to recover medical assistance benefits paid on behalf of a recipient from a surviving spouse's estate[.]"); *Hines v. Department of Public Aid*, 221 Ill.2d 222, 302 Ill.Dec. 711, 850 N.E.2d 148, 153 (2006) ("No provision [in Section 1396p(b)] is made for collection from the estate of the recipient's spouse.").

Although Section 1396p(b) authorizes recovery only from the recipient's estate, it allows states to define "estate" in such a way that will permit recovery from traditionally non-probate property. Concerning this issue, Section 1396p(b)(4) says:

For purposes of this subsection, the term "estate," with respect to a deceased individual—

A. shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

B. may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

Applying the plain and ordinary meaning of Section 1396p(b)(4)A's language, we conclude that an estate, for the purpose of Medicaid recovery, must include all of what Missouri's probate law would define as a recipient's estate. We understand "shall" as a mandate. *SSM Health Care St. Louis v. Schneider*, 229 S.W.3d 279, 281 (Mo.App.2007). Section 1369p(b)(4)B, on the other hand, by using "may," grants Missouri permission to include any of the recipient's other property and assets that would traditionally fall outside the recipient's probate estate. *Estate of Parker*, 25 S.W.3d 611, 616 (Mo.App.2000) (" '[M]ay' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power.").

Section 1396p(b)(4)B empowers Missouri to define "estate" broadly and thereby to pursue property that a recipient owned jointly with another individual when the recipient died but that would not be included in the decedent's estate. If a surviving spouse's estate includes property that was owned jointly with a deceased Medicaid recipient, Section 1396p(b) permits a state to trace this property back to the recipient and to recover it as a reimbursement. *In the Estate of Shuh*, 248 S.W.3d 82, 85–86 (Mo.App.2008); *Hines*, 302 Ill.Dec. 711, 850 N.E.2d at 154; *Estate of DeMartino v. Division of Medical Assistance and Health Services*, 373 N.J.Super. 210, 861 A.2d 138, 145 (2004); *State Department of*

---

**2.** We added the emphasis.

*Human Resources Welfare Division v. Estate of Ullmer*, 120 Nev. 108, 87 P.3d 1045, 1050 (2004); JANEL C. FRANK, Note, How Far is Too Far? Tracing Assets in Medicaid State Recovery, 79 N.D.L.REV. 111, 130–31 (2003). Hence, although Section 1396p(b) does not permit recovery from a spouse's estate, Missouri's Medicaid program could still recover from the estate of a recipient's spouse if Missouri's probate law defined a Medicaid estate to include property not susceptible to probate, including property owned by tenants by the entirety.

For the purposes of probate, the General Assembly has defined "estate" as "the real and personal property of the decedent or ward, as from time to time changed in form by sale, reinvestment or otherwise, and augmented by any accretions and additions thereto and substitutions therefor, and diminished by any decreases and distributions therefrom[.]" Section 472.010(11), RSMo 2000. Although this definition is vague, case law has held consistently that probate law does not govern the passing of property owned by tenants by the entirety. *See Rinehart v. Anderson*, 985 S.W.2d 363, 367 (Mo.App. 1998) (property passes immediately to surviving spouse and is not subject to probate); *In re Estate of Hughes*, 735 S.W.2d 787, 791 (Mo.App.1987).

■■ Probate's non—application to tenancy by the entirety results from its being a form of ownership that is created by marriage in which each spouse owns the entire property, rather than a share or divisible part. *Rinehart*, 985 S.W.2d at 367. It is based on a legal fiction that the husband and wife own the property jointly as a single person. *In re Estate of Hughes*, 735 S.W.2d at 791. Together, each has an undivided interest. *Id.* When one of the spouses dies, the surviving spouse becomes the property's sole owner by virtue of being owner of 100 percent of the property. *Id.* Hence, property owned by Minnie and Orville Bruce as tenants by the entirety was not part of Minnie Bruce's probate estate and did not fit within the definition of "estate" enunciated in Section 472.010(11). *Rinehart*, 985 S.W.2d at 367; *In the Matter of Estate of Hughes*, 735 S.W.2d at 791. The State, therefore, could not use Section 1396p(b)(4)A to seek recovery from Bruce's estate.

Nor could the State recover from Orville Bruce's estate because the General Assembly has not taken the step required by Section 1396p(b)(4)B to adopt a definition of estate for the purpose of Medicaid recovery to include such property. For example, the New Jersey legislature, unlike Missouri, has adopted a definition of estate that includes:

> [A]ll real and personal property and other assets included in the recipient's estate as defined in N.J.S. 3B:1–1, as well as any other real and personal property and other assets in which the recipient had any legal title or interest at the time of death, to the extent of that interest, including assets conveyed to a survivor, heir or assign of the recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.

N.J.Rev.Stat. Section 30:4D–7.2a(3) (1995).[3] Until the General Assembly takes

---

**3.** Other examples of states that have taken this course are Iowa and Nevada. The Iowa legislature has defined a Medicaid estate to include "any real property, personal property, or other asset in which the recipient, spouse, or child had any legal title or interest at the time of the recipient's, spouse's, or child's death, to the extent of such interests, including but not limited to interests in jointly held property, retained life estates, and interests in trusts." Iowa Code Ann. Section 249A.5(2)(c) (2003). Similarly, Nevada has defined a Med-

this step, Missouri's Medicaid program will not be able to recover property possessed by a successor by virtue of being owned as a tenant by the entirety.

The State argues that Section 461.300, RSMo 2000, expands the definition of estate to include property held as tenants by the entirety. Section 461.300.1 says:

Each recipient of a recoverable transfer of a decedent's property shall be liable to account for a pro rata share of the value of all such property received, to the extent necessary to discharge the statutory allowances to the decedent's surviving spouse and dependent children, and claims remaining unpaid after application of the decedent's estate[.]

Section 461.300 authorizes the court to expand the decedent's estate when the estate is insufficient to pay its creditors. Even assuming that the State is a creditor that could make a claim under Section 461.300, the State's contention fails because the house that Minnie Bruce and her husband owned as tenants by the entirety was not a recoverable transfer under the statute. Section 461.300.10(4) defines a recoverable transfer:

[A] nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death, but only to the extent of the decedent's contribution to the value of such property.

To meet this definition, Bruce's house would either have to be a "nonprobate transfer of decedent's property" or "property ... that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death." Property held by tenants by the entirety does not fit within either of these categories.

Section 461.005(7), RSMo 2000, defines a non—probate transfer as "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation," and it does not include "survivorship rights in property held as joint tenants or tenants by the entirety[.]" And property held by tenants by the entirety is not subject to satisfaction of the decedent's debts. In Missouri, creditors are not able to levy on this property to satisfy the debts or claims of one spouse. *Farmers Exchange Bank v. Metro Contracting Services, Inc.*, 107 S.W.3d 381, 395 (Mo.App. 2003).

Hence, Orville Bruce's house was not a recoverable transfer under Section 461.300. Even assuming that the General Assembly intended for Section 461.300 to expand the definition of the estate for Medicaid recovery purposes, it did not expand it to cover property held by tenants by the entirety.

Equally flawed is the dissent's suggestion that the General Assembly used Section 473.399.2 to expand the definition of a Medicaid estate. As we noted above, Section 473.399.2 says:

For the purposes of this section, the providing of assistance shall create an obligation which may be recovered by

---

icaid estate as "all real and personal property and other assets included in the estate of a deceased recipient of Medicaid and any other real and personal property and other assets in or to which he had an interest or legal title immediately before or at the time of his death, to the extent of that interest or title. The

term includes, without limitation, assets conveyed to a survivor, heir or assign of the deceased recipient through or as the result of any joint tenancy, tenancy in common, survivorship, life estate, living trust, annuity, declaration of homestead or other arrangement." Nev.Rev.Stat. Section 422.054 (2003).

filing a claim in the probate division of the circuit court against the decedent estate of the spouse of the deceased recipient upon such spouse's death as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo. The amount of the state debt shall be the full amount of assistance without interest provided to the recipient during the marriage of such recipient and spouse; *provided that the liability of the obligor estate shall not exceed the value of the combined resources of the recipient and the spouse of the recipient on the date of death of the recipient.*[4]

If, as has been suggested, the General Assembly intended for this statute to expand the definition of an individual Medicaid recipient's estate to include non—probate property, it could not have chosen a more oblique and crabbed manner for doing so. Indeed, many of the states whose courts have declared that the law permits spousal recovery did so only because those states' legislatures had adopted definitions that closely track the language of Section 1396p(b)(4)B. *See In re Estate of Laughead,* 696 N.W.2d 312, 315 (Iowa 2005); *Estate of DeMartino,* 861 A.2d at 143; *Ullmer,* 87 P.3d at 1050.[5]

We are dubious that Missouri would have elected to shroud its expansion of the definition of a Medicaid estate in discussions of the limits on the value of the property to be recouped. Such a prospect is highly unlikely. Indeed, the Supreme Court has instructed that the primary rule of statutory construction is to glean legislative intent by understanding the statute according to its objective. *Nixon v. Quik-Trip Corporation,* 133 S.W.3d 33, 37 (Mo.

banc 2004). The objective that the General Assembly articulated in Section 473.399 was to authorize spousal recovery and to set a limit on how much could be recouped from the obligor's estate. Nothing in the statute's language indicates that its objective was to expand the definition of a Medicaid estate. Even had the General Assembly decided to take an oblique and crabbed route to redefining a Medicaid estate, surely it would have declared that the liability of the obligor's estate *extended* only to the spouses' combined resources instead of saying that the "liability of the obligor estate shall not *exceed* the value of the combined resources of the recipient and the spouse."[6] The General Assembly' use of this phrase establishes that the Section 473.399's second sentence was the monetary limit for spousal recovery.

Although the General Assembly enacted Section 473.399.2 for the obvious purpose of facilitating spousal recovery, it did so in 1990. LAWS OF MISSOURI 1990. At that time, however, federal law did not give the states the option of defining estate to include non—probate property. Federal authorization for recoupment of non—probate property—provided a state redefined a Medicaid estate to allow it—did not come until three years *after* the General Assembly enacted Section 473.399.2. *See* FRANK, 79 N.D.L.REV. at 118 (Congress amended SECTION 1396p during 1993 to include the definition of estate currently found in Section 1396p(b)(4)).

That Section 473.399.2 predated federal authorization is quite telling in eliminating the possibility that the General Assembly intended for the statute to expand the definition of a Medicaid estate. Obviously,

4. We added the emphasis.

5. Iowa's expansive definition of Medicaid estate appears *supra,* at 403. New Jersey's and

Nevada's expansive definitions of Medicaid estate appear *supra,* at Note 3.

6. We added the emphasis.

the General Assembly did not enact Section 473.399.2 because it foresaw Congress's enactment of Section 1394p(b)(4). The timing of Section 473.399's enactment belies a notion that its purpose was to expand the definition of a Medicaid estate.

The State avers numerous public policy reasons as to why we should interpret Section 1396p(b) as providing for spousal recovery. While these public policy reasons may be valid, we are constrained by the language of Section 1396p(b). It simply does not permit spousal recovery under Missouri's present statutes. Missouri has not opted, as other states have, to take advantage of the authority afforded by Section 1396p(b)(4)B to define a Medicaid estate in such a manner as to capture traditionally non—probate assets. If the General Assembly wanted to empower Missouri's Medicaid program to recover non—probate assets, all it need do is redefine "estate" for purposes of Medicaid recovery, but it has not done so.

For these reasons, we reverse the judgment of the circuit court. We remand the case to it so it can vacate its judgment for the State and enter judgment for Orville Bruce's estate.

JAMES M. SMART, JR., Judge, concurs.

JOSEPH M. ELLIS, Judge, dissents in a separate opinion.

JOSEPH M. ELLIS, Judge, dissenting.

I respectfully dissent. I agree with the majority that federal law allows a state to recover Medicaid assistance from the recipient's spouse's estate if the state opts to expand its definition of "estate" to include property that the Medicaid recipient owned jointly with his or her spouse at the time of the recipient's death. However, I

differ with the majority's conclusion that Missouri has not adopted such an expanded definition, finding rather that the legislature did so when it enacted the public assistance recovery statutes, §§ 473.398 and 473.399.[1]

Sections 473.398 and 473.399 are amendments to, and parts of, the Probate Code, specifically Chapter 473 dealing with administration of decedents' estates. While Chapter 472 contains the general provisions of the Probate Code, and § 472.010 provides the general definition of "estate" for probate purposes, §§ 473.398 and 473.399 are more specific statutes dealing with the same issue.

Statutes addressing the same subject matter are considered in *pari materia,* and must be construed together. *KC Motorcycle Escorts, L.L.C. v. Easley,* 53 S.W.3d 184, 187 (Mo.App. W.D.2001). "When one statute deals with a subject in general terms and another statute deals with the same subject in a more specific way, the two statutes should be harmonized if possible. If the statutes cannot be reconciled, the more specific prevails over the more general." *Id.* (internal citations omitted).

Sections 473.398 and 473.399 amended the Probate Code to permit recovery of public assistance. They set forth the procedure for doing so and the extent to which recovery may be had. In doing so, they expanded the concept and definition of "estate" for purposes of Medicaid assistance recovery. This conclusion is confirmed by an examination of state and federal statutes and applicable case law.

A review of the Medicaid Act and its history is essential to an understanding of both the federal and Missouri statutory schemes. Congress created the Medicaid program when it amended the Social Security Act in 1965, in what is now codified as

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

42 U.S.C. § 1396, *et. seq.* *In re Estate of Shuh*, 248 S.W.3d 82, 83–84 (Mo.App. E.D. 2008). States are given the option of participating in the Medicaid program. *Id.* If they choose to do so, they must adopt a state plan, including provisions for eligibility and assistance, that complies with all federal statutory and regulatory requirements. *Id.* If a state participates, it reimburses health care providers for the cost of care provided to Medicaid recipients, and the federal government then reimburses the state for a portion of the expenditures. *West Virginia v. United States HHS*, 132 F.Supp.2d 437, 440 (D.W.Va.2001).

Congress became concerned as early as 1980 that wealthy elderly Americans were "gaming" the Medicaid program by divesting themselves of their assets before entering a nursing home and then applying for Medicaid benefits. Thus, "[t]he first major restriction in the Medicaid program came in 1980 with the Boren–Long Amendment, *42 U.S.C. § 1396p(c)(2)(1988)*." Ira Stewart Wiesner, *OBRA '93 and Medicaid: Asset Transfers, Trust Availability, and Estate Recovery Statutory Analysis in Context,* 19 Nova L.Rev. 679, 682 n. 10 (Winter 1995). Continued concern about loopholes in Medicaid eligibility led to frequent amendments between 1980 and the adoption of the Omnibus Budget Reconciliation Act of 1993 ("OBRA '93"). *Id.* OBRA '93 contained the estate recovery provisions that are generally still applicable today and are at issue in this appeal.

"Prior to 1993, states were permitted, but not required, to establish estate recovery programs." *West Virginia,* 132 F.Supp.2d at 440. OBRA '93 made it mandatory that states "recoup benefits from the estates of certain deceased Medicaid recipients as a condition of receiving Medicaid Funds." *Id.* But, as noted by the court in the West Virginia case,

"OBRA '93 does not force estate recovery upon any citizen of a state. Persons subject to estate recovery elect to receive Medicaid benefits and the regulations demand that such recipients receive notice of the estate recovery requirement when choosing to accept or reject Medicaid long-term care benefits." *Id.* at 441.

Although Congress expressed frequent concern about loopholes in the Medicaid laws in the decade or more leading up to its adoption of OBRA '93, it was similarly concerned about protecting the elderly from hardships. A person seeking to qualify for Medicaid as medically needy must have low income and low assets, and, therefore, the person's resources, to the extent they exceed the statutory and regulatory limit, must be spent down before qualifying. *Shuh,* 248 S.W.3d at 84–85. Congress recognized the potential hardship that "spend down" requirements could have on the spouses of medical assistance recipients. *Id.*

To ameliorate that hardship to spouses of Medicaid recipients, Congress enacted the Medicare Catastrophic Coverage Act of 1988 ("MCCA") which includes provisions to financially protect the spouse who was not receiving medical assistance. These provisions, commonly called the spousal impoverishment provisions, allow the spouse to retain a certain level of resources and income and protect those assets from use as payment for medical care.

*Id.*

Congress's concern over spousal hardship was also apparent in OBRA '93. 42 U.S.C. § 1396p(a)(1)(B) authorizes imposition of a lien on a Medicaid recipient's real property, but 42 U.S.C. § 1396p(a)(2) expressly provides that "[n]o lien may be imposed under paragraph (1)(B) on such individual's home if—(A) the spouse of such individual ... is lawfully residing in

such home." The provisions of the federal law applicable to this appeal similarly reflect a desire not to impoverish a Medicaid recipient's spouse during their lifetime. In 42 U.S.C. § 1396p(b), authorizing a recovery of benefits under the state plan, subsection (b)(2) expressly limits recoveries, stating that "[a]ny adjustment or recovery under paragraph (1) may be made *only after the death of the individual's surviving spouse . . . .* " (Emphasis added).

The spousal impoverishment provisions relating to eligibility for Medicaid benefits, and the estate recovery provisions of the Medicaid law authorizing such recoveries only after the recipient's spouse's death, are an expression of two salutary congressional goals.

> First, expanding estate recovery furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services. Second, the MCCA [Coverage Act of 1988] serves as part of the overall effort to not impoverish a Medicaid recipient's spouse during the spouse's lifetime. According to the United States Supreme Court and the Congressional Record, the goal of the MCCA was to protect the community spouse from poverty, while protecting the Medicaid system from being abused by financially secure couples.

*Shuh,* 248 S.W.3d at 86 (internal quotations and citations omitted).

All the while, however, Congress was expanding the Medicaid program, often without appropriate funding levels, which led to skyrocketing costs for the states. "The states, particularly after the passage of the MCCA, experienced rapid, and [from their perspectives] uncontrollable escalation of their state Medicaid expenditures." *Wiesner, supra,* at 693. "In Florida, for example, the annual Medicaid expenditures for nursing homes increased over $100 million for a $1 billion budget for fiscal year 1992–1993." *Id.* at 683 n. 14 (citing *Burton D. Dunlop et al., Fla. Int'l Univ., The Context of Long Term Care in Florida: Interrelationships of Medically Needy, Assets Recovery and Long Term Care Insurance Policy Initiatives 1* (1992)).

As a result, Governors and state legislatures concerned with balancing state budgets were creatively trying to reduce costs and secure recovery for payments made. "Prior to 1993, states were permitted, but not required, to establish estate recovery programs." *West Virginia,* 132 F.Supp.2d at 440. Thus, the states, as is often the case in "cooperative federalism" programs, served as incubators of new ideas in cost management and recovery.

For example, as early as the late 1970s, New York adopted provisions granting eligibility to a Medicaid applicant even though he or she had a spouse with sufficient income and assets to provide medical assistance. *See In re Estate of Imburgia,* 127 Misc.2d 756, 487 N.Y.S.2d 263, 265 (N.Y.Surr.Ct.1984) (*aff'd by* 130 A.D.2d 658, 515 N.Y.S.2d 590 (N.Y.App.Div.1987), *disapproved on other grounds by In re Estate of Craig,* 82 N.Y.2d 388, 604 N.Y.S.2d 908, 624 N.E.2d 1003, 1006 (N.Y. 1993)). The statute was interpreted to create an implied contract allowing for recovery from the spouse or the spouse's estate. *Id.*

California, on the other hand, adopted a statute prior to 1987 that permitted the state to " 'claim against the estate of the decedent, *or against any recipient of the property of that decedent by distribution or survival* an amount equal to the [Medi-Cal] payments received.' " *Citizens Action League v. Kizer,* 887 F.2d 1003, 1005 (9th Cir.1989) (quoting *Cal. Welf. & Inst.Code § 14009.5* (West Supp.1989)) (emphasis

and brackets in original). Thus, the statute expanded the definition of "estate" to include property owned in joint tenancy with a former benefits recipient.

At least as early as 1990, Minnesota had a statute allowing for recovery from a surviving spouse's estate to the extent of "the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage." *Minn.Stat. § 256B.15*. This is the same statute, but for minor changes not here relevant, that was examined in *Jobe, Gullberg,* and *Barg,* all discussed *infra.*

And, of course, Missouri, also in 1990, adopted §§ 473.398 and 473.399, which will be discussed in more detail *infra,* generally allowing for recovery from a surviving spouse's estate to the extent of "the value of the combined resources of the recipient and the spouse of the recipient on the date of death of the recipient." *§ 473.399.2.*

Not surprisingly, there were legal challenges to some of these statutes, but they met with mixed results. In *Imburgia,* the state paid the cost of nursing home assistance for Mrs. Imburgia prior to her death in 1981 then sought to recover those costs from the estate of Mr. Imburgia after his death in 1983. 487 N.Y.S.2d at 264 (adopting facts from prior decision at *In re Estate of Imburgia,* 122 Misc.2d 1033, 472 N.Y.S.2d 305, 305–06 (N.Y.Surr.Ct.1984)). The estate claimed that, to the extent New York statutes permitted such recovery, they conflicted with the pre–1993 version of 42 U.S.C. § 1396 p(b)(1), which provided that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made." *Id.* The court analyzed federal statutes and regulations relating to the concept of "deeming," where a portion of a spouse's income is "deemed" available to the benefit recipient, and those relating to recoupment of medical assistance. *Id.* at

264–65. Based on this analysis, the court held that "to the extent that New York statutes permit recovery against the estate of [a surviving spouse], such statutes are not in conflict with Federal law or regulations and do not therefore violate the supremacy clause of the United States Constitution." *Id.* at 265.

The California statute was also challenged in *Kizer,* a 2–1 decision with one judge dissenting. In that case, survivors of Medicaid recipients who held assets in joint tenancy with the recipient during the recipient's lifetime claimed that the California provision was inconsistent with 42 U.S.C. § 1396p(b)(1)(B) (1982). 887 F.2d at 1005–06. The majority noted that the federal statute limited states to recouping benefits from the recipient's "estate," and that Congress had not defined "estate" in the statute. *Id.* at 1006. Therefore, the majority looked to the common law definition of the term, holding that "[b]ecause 'estate' under common law does not include property formerly held in joint tenancy, ... we conclude that the California statute is impermissibly broad and is inconsistent with federal Medicaid law." *Id.* at 1007–08. The dissent, on the other hand, argued that adoption of the common law definition "makes recovery depend on a technical distinction that has nothing necessarily to do with the purposes of the Medicaid program or of the exception permitting recovery of benefits furnished...." *Id.* at 1008.

Thus, when Missouri adopted §§ 473.398 and 473.399 in 1990, the state of the law was far from clear as to whether a state could expand its definition of "estate" to include "combined resources of the recipient and the spouse ... on the date of death of the recipient," *§ 473.399.2,* and could permit recovery from a surviving spouse's estate. Accordingly, any suggestion that § 473.399 could not have been

intended to expand the definition of "estate" because it predated 42 U.S.C. § 1396p(b)(4)(B) (1993) is clearly without merit. Rather, it is absolutely crystal clear that the intent of the Missouri legislature was to push the envelope, to expand the definition of estate, and to allow recovery from a surviving spouse's estate.

The Missouri law was not challenged prior to the adoption of OBRA '93, so it is unknown whether it would have passed muster based on the prior version of 42 U.S.C. § 1396p(b). But when Congress finally responded to the state initiatives [2] and specifically allowed states to expand their definition of "estate" with the passage of OBRA '93, Missouri was already on board with the expanded concept of "estate" encompassed in § 473.399. *See Demille v. Belshe,* 1994 WL 519457, 1994 U.S. Dist. LEXIS 13917, 42–43 (N.D.Cal. 1994) (holding that *Kizer's* striking down of California's expansive definition of estate was superseded by the adoption of an expansive definition of "estate" in OBRA '93, stating that "[n]ow, the state is permitted to recoup its expenses from property (such as joint tenancies) not included within the common law definition of 'estate.'").

This brings us to the relevant provisions of federal and Missouri statutory law that are applicable to the case *sub judice.* The pertinent federal law is set out in 42 U.S.C. § 1396p(b):

(b) Adjustment or recovery of medical assistance correctly paid under a State plan.

(1) No adjustment or recovery of any medical assistance correctly paid on be-

half of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:

\* \* \*

(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate. . . .

\* \* \*

(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any. . . .

\* \* \*

(4) For purposes of this subsection, the term "estate", with respect to a deceased individual—

(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

(B) may include, at the option of the State . . . any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

---

**2.** In addition to the numerous state law initiatives, at both the January 1992 meeting of the State Medicaid Directors' Association ("SMDA") and the July 1992 conference of the National Governors' Association ("NGA"), Medicaid reform was a featured and hot top-

ic, where "[r]estriction of eligibility, through the attractive vehicle of loophole closing, and budget replenishment through stronger estate recovery authority were the most sought results." *Wiesner, supra,* at 691–94.

Missouri's estate recovery statute, § 473.399, provides, in relevant part, as follows:

1. As used in this section, the following terms mean:

\* \* \*

(2) "Obligor estate", the estate against which an obligation under this section arises;

(3) "Recipient", a person to whom or on whose behalf assistance is provided;

\* \* \*

2. For the purposes of this section, the providing of assistance shall create an obligation which may be recovered by filing a claim in the probate division of the circuit court against the decedent estate of the spouse of the deceased recipient upon such spouse's death as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo. The amount of the state debt shall be the full amount of assistance without interest provided to the recipient during the marriage of such recipient and spouse; ***provided that the liability of the obligor estate shall not exceed the value of the combined resources of the recipient and the spouse of the recipient on the date of death of the recipient.***

(Emphasis added.)

As noted *supra,* based on the history of the Medicaid program and the states' efforts to control costs, it is certain that the purpose of the Missouri legislature in adopting § 473.399 was to expand the definition of "estate" and provide for recovery from the estate of a benefit recipient's spouse. Whether it was effective in doing so prior to 1993 is unclear, but the conclusion is inescapable that it did so after adoption of OBRA '93. While evident on its own, this conclusion is also supported by significant case law.

We start with the North Dakota Supreme Court's decision in the case of *In re Estate of Thompson,* 586 N.W.2d 847 (N.D.1998). In that case, Nathaniel Thompson received Medicaid benefits prior to his death on December 20, 1992. *Id.* at 848. His wife, Victoria Thompson, never received any medical assistance benefits. *Id.* She died on September 15, 1995, leaving assets subject to administration. *Id.* An estate was opened and a personal representative appointed. *Id.* The North Dakota Department of Human Services filed a claim against Mrs. Thompson's estate for recovery of the medical assistance benefits provided to her husband. *Id.* The trial court entered summary judgment in favor of the Department allowing the claim, and the personal representative appealed. *Id.*

On appeal, the court did not examine its general definition of "estate" but only looked at the following language in its estate recovery statute, *N.D.C.C. § 50–24.1–07:*

1. On the death of any recipient of medical assistance who was fifty-five years of age or older when the recipient received the assistance, and on the death of the spouse of such a deceased recipient, the total amount of medical assistance paid on behalf of the recipient following the recipient's fifty-fifth birthday must be allowed as a preferred claim against the decedent's estate. . . .

2. No claim must be paid during the lifetime of the decedent's surviving spouse, if any. . . .

*Id.* at 849 (emphasis omitted). The court held that the "broad definition of the recipient's estate in 42 U.S.C. § 1396p(b)(4) must be considered," *id.* at 850, stating:

That expansive definition is broad enough to encompass the department's claim against the estate of a deceased

spouse of a deceased recipient of medical assistance benefits for the amount of medical assistance paid out, to the extent the recipient at the time of death had any title or interest in assets which were conveyed to his or her spouse 'through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.' "

*Id.* In so holding, the court also stated:

Because the expansive federal definition of 'estate' in 42 U.S.C. § 1396p(b)(4) extends only to assets in which the medical assistance benefits recipient 'had any legal title or interest in at the time of death,' *it is a matter of little moment whether the department seeks to recover the benefits paid by filing a claim in the estate of the recipient after the death of the recipient's surviving spouse or by filing a claim in the surviving spouse's estate.*

*Id.* at 851 n. 3 (emphasis added).

A Minnesota court reached a similar result in *In re Estate of Jobe,* 590 N.W.2d 162 (Minn.App.1999). In that case, Amos and Alice Jobe, husband and wife, owned 120 acres that they acquired in 1974. *Id.* at 164. Mr. Jobe entered a nursing home in 1993 and received Medicaid benefits from that time until his death in 1995. *Id.* Mrs. Jobe, who never received medical assistance, died in 1996 and was the sole owner of the 120 acres at that time. *Id.* The County Department of Social Services filed a claim against Mrs. Jobe's estate for the amount of medical assistance benefits provided to Mr. Jobe before his death. *Id.* The trial court allowed the claim, and the estate appealed. *Id.*

The estate asserted on appeal that the statute authorizing recovery of medical assistance was invalid because it conflicted with federal law. *Id.* The statute in question provides:

Subd. 1a. **Estates subject to claims.** If a person receives any medical assistance hereunder, on the person's death * * * or on the death of the survivor of a married couple, either or both of whom received medical assistance, *the total amount paid for medical assistance rendered for the person and spouse shall be filed as a claim against the estate of the person or the estate of the surviving spouse* in the court having jurisdiction to probate the estate.

\*       \*       \*

Subd. 2. **Limitations on claims.** * * * A claim against the estate of a surviving spouse who did not receive medical assistance, for medical assistance rendered for the predeceased spouse, is *limited to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage.*

*Id.* at 164 (emphasis added); *Minn.Stat. § 256B.15.*

The Minnesota court began its analysis by stating that there was a three-part test in determining whether a federal statute preempts a state statute, that being: "(1) compliance with the federal and state provisions is physically impossible; (2) preemption is express and unequivocal in language of the federal statute; and (3) congressional preemptive intent is implicit in the overall scheme of federal and state regulation." *Jobe,* 590 N.W.2d at 165. The court found that the second and third parts of this test did not apply to the facts at hand and that the only basis for preemption was whether compliance with the federal and state provisions was physically impossible. *Id.*

The court then reviewed the federal statute, 42 U.S.C. § 1396p(b). It noted that the federal statute gives states the option to define an individual's estate as including

"assets in which a decedent held 'any legal title or interest at the time of death,' including 'assets conveyed ... through joint tenancy ... or other arrangement.' " *Id.* at 165. The court rejected the estate's contention that the Minnesota statute went beyond the authority granted by the federal statute by permitting recovery from the estate of a surviving spouse. *Id.* It stated that "[a]cceptance of the estate's position and its narrow interpretation of section 1396p would render portions of the federal statute meaningless, particularly the phrase 'conveyed to a survivor ... through joint tenancy.' " *Id.* at 166. The court also rejected the assertion that allowing claims against surviving spouse's estates conflicts with the asset allocation and spend down provisions of state and federal law. *Id.* In doing so, the court stated:

> The rules regarding eligibility for medical assistance do not necessarily override rules for recovery of benefits paid. Rather, because both federal and state law allow recovery only after the death of an individual's surviving spouse, dual interests are served. One policy prevents the impoverishment of the surviving spouse during his or her lifetime. Once that spouse dies and the need for protection from impoverishment ceases, allowing a state to recover medical assistance benefits previously paid furthers the broader purpose of funding future services to the medically needy. These policies are both served by allowing the state to recover medical assistance benefits paid to or on behalf of a predeceased spouse from a surviving spouse's estate, to the extent the assets contained in that estate were jointly owned by the couple during their marriage.

*Id.* (internal citations and parentheticals omitted).

The Minnesota court's holding is clear and concise:

Because federal law now allows states to opt for a definition of estate that may include "assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy-in-common, survivorship, life estate, living trust, or other arrangement," *the state statute that allows medical assistance benefit reimbursement from the estate of a surviving spouse from "assets of the estate that were marital property or jointly-owned property at any time during the marriage" is entirely consistent with federal law and not preempted.* We therefore affirm the district court's allowance of this claim against the estate.

*Id.* at 166–67 (internal citation omitted).

It is important to recognize that the Minnesota statute under review in *Jobe,* like Missouri's statute, predated the passage of OBRA '93. It remained essentially unchanged from the time it was adopted until *Jobe* was decided (and thereafter). Accordingly, *Jobe,* like *Demille, supra,* also stands for the proposition that it matters not whether the statute was efficacious prior to 1993 because even it was not, it became effective upon passage of OBRA '93.

The Minnesota Court of Appeals addressed this issue again, albeit in a different factual situation, in *In re Estate of Gullberg,* 652 N.W.2d 709 (Minn.App.2002). In *Gullberg,* the recipient spouse had conveyed the homestead, which was marital property held in joint tenancy, to the surviving spouse before applying for and receiving medical assistance benefits. *Id.* at 713. The court reaffirmed its holding in *Jobe,* declaring that "the county's claim against the estate is clearly allowed by Minnesota's estate recovery statute," but asserted that "the issue is whether allowance of the claim in its entirety complies with federal law." *Id.* The court stated

that to the extent that Minnesota law "allows recovery 'to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage,' we conclude that it goes beyond what is allowed by federal law, which allows recovery only 'to the extent of' the individual's legal interest at the time of death." *Id.* at 714. Thus, the court found a partial preemption, holding only, as had *Jobe*, that Minnesota law "allows claims against a surviving spouse's estate only to the extent of the value of the recipient's interest in marital or jointly owned property at the time of the recipient's death." *Id.* The court concluded its analysis by stating:

> Thus, allowing a claim like this serves to fulfill the purposes of the Medicaid Act by protecting the surviving spouse's right to enjoy and use assets during his or her lifetime, while enabling the county to recoup a portion of its expenditures and to prevent "capable individuals from using Medicaid as artificially inexpensive long-term care insurance."

*Id.* (quoting Jon M. Zieger, *The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery*, 5 Elder L.J. 359, 374–76 (Fall 1997)).

The Minnesota Court of Appeals' most recent pronouncement on the subject came in the recent case of *In re Estate of Barg*, 722 N.W.2d 492 (Minn.App.2006). The issue in *Barg* was the proper calculation, pursuant to *Gullberg*, of the value of a Medicaid recipient's interest in transferred joint-tenancy property that was part of the surviving spouse's estate. *Id.* at 494. Nonetheless, the court again reaffirmed the holding in *Jobe*, stating:

> ***Minnesota's estate-recovery statute*** provides that the state may assert a claim against the estate of a surviving spouse to recoup medical-assistance ben-

efits provided to the predeceased spouse. The Minnesota statute ***thus reflects the legislature's exercise of the option to expand the definition of estate to allow claims against the surviving spouse's estate.***

*Id.* at 495 (emphasis added).

Several other courts have reached similar results. *See In re Estate of Laughead*, 696 N.W.2d 312, 317 (Iowa 2005) (holding that the probate definition of "estate" and the general probate laws do not apply because the estate recovery statute "is a specific law that addresses the particular matter at issue"); *Estate of DeMartino v. Div. of Medical Assistance & Health Servs.*, 373 N.J.Super. 210, 861 A.2d 138, 145 (N.J.Super.Ct.2004) (holding that the estate recovery statutes define the term "estate" consistent with federal law and the assets of decedent's testamentary trust, which was merely a vehicle for transfer of the decedent's assets to his heirs, are part of decedent's "estate" for purposes of estate recovery act); *State of Nevada Dep't of Human Resources v. Ullmer*, 120 Nev. 108, 87 P.3d 1045, 1050 (Nev.2004) (Nevada estate recovery "statutes broaden the definition of 'estate' to include 'assets conveyed to a survivor, heir or assign of the deceased [Medicaid] recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.'" (quoting *NRS 422.054* (2001) (amended 2003))).

Cases ruling to the contrary are limited. In *Hines v. Dep't of Public Aid*, 221 Ill.2d 222, 302 Ill.Dec. 711, 850 N.E.2d 148 (Ill. 2006), Beverly and Julius Tutinas were husband and wife and owned their home and an automobile in joint title. *Id.* at 150. Julius entered a nursing home and received Medicaid benefits prior to his death. *Id.* Beverly died several years later still owning, as the survivor, the home and automobile. *Id.* An estate was opened and

the Department of Public Aid filed a claim to recover the benefits paid on behalf of Julius. *Id.* The trial court allowed the claim, and the estate appealed. *Id.* The Court of Appeals reversed and the case was transferred. *Id.* at 150–51. The Illinois Supreme Court, while noting that many states would allow such a recovery, held that the Illinois General Assembly had "expressly limited the more expansive definition of estate to the only situation where the Medicaid Act requires it to be used, namely, where the deceased recipient 'has received (or [was] entitled to receive) benefits under a long-term care insurance policy.'" *Id.* at 154 (quoting *305 ILCS Ann. 5/5–13, Historical & Statutory Notes*, at 189 (Smith–Hurd 2001)). Thus, *Hines* was decided on the basis of a *state statute that expressly precluded recovery.*

The only other case to which we have been referred, or have found through our own research, is *In re Estate of Budney*, 197 Wis.2d 948, 541 N.W.2d 245 (Wis.App. 1995).[3] In that case, Paul and Grace Budney were husband and wife. *Id.* at 246. Grace entered a nursing home and received Medicaid benefits prior to her death. *Id.* Paul subsequently died, and the Department of Health & Social Services filed a claim in his estate to recover medical assistance benefits paid on behalf of Grace. *Id.* The estate objected, and the

trial court entered judgment in favor of the estate. *Id.* The court, in one short paragraph with virtually no analysis, and without any mention whatsoever of the federal law's expansive definition of "estate," concluded that 42 U.S.C. § 1396p(b)(1) does not permit recovery from the estate of a surviving spouse. *Id.*

*Budney* has only been followed in one case, *Bienemann v. State*, 577 N.W.2d 387 (Wis.App.1998), and otherwise has rarely even been mentioned.[4] The North Dakota Supreme Court in *Thompson* discussed the holding in *Budney*, but it stated that "the *Budney* court did not address the effect of the broad definition of 'estate' in 42 U.S.C. § 1396p(b)(4), and we are not persuaded by the decision." *Thompson*, 586 N.W.2d at 850. I am likewise unpersuaded by the decision.

Returning now to the instant appeal, Missouri's estate recovery statute, § 473.399.2, provides, in pertinent part, as follows:

> The amount of the state debt shall be the full amount of assistance without interest provided to the recipient during the marriage of such recipient and spouse; *provided that the liability of the obligor estate shall not exceed the value of the combined resources of the recipient and the spouse of the recipi-*

---

3. The *Budney* court cites *Estate of Craig*, 82 N.Y.2d 388, 604 N.Y.S.2d 908, 624 N.E.2d 1003 (N.Y.1993), as being in accord. This is incorrect because *Craig* was applying prior law. The New York court expressly stated that "[t]he Omnibus Budget Reconciliation Act of 1993 ... has no relevance to the resolution of this case; it applies only to Medicaid recipients who die after October 1, 1993. Thus, by its own terms, the amendments ... do not aid the appellant's case for nunc pro tunc recovery on the 1983 payments on behalf of Mr. Craig." *Id.* at 1006 (internal citations omitted).

4. The decision in *Budney*, among numerous others, was noted in *In re Estate of Smith*, 2006 WL 3114250, 2006 Tenn.App. Lexis 715 (Tenn.Ct.App. Nov. 1, 2006), in referring to cases addressing issues similar to that in *Smith*. The Tennessee court found it unnecessary to decide whether the state could recover through the estate of a surviving spouse, concluding rather that the state could not recover "because the benefit recipient, Mrs. Smith, had no estate as that term is defined under 42 U.S.C. § 1396 p(b)(4)." *Id.* at *4, 2006 Tenn.App. Lexis 715 at *13.

*ent on the date of death of the recipient.*

(Emphasis added.) This language is very similar to the Minnesota statute, which limited recovery from the spouse's estate to "the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage." *Jobe,* 590 N.W.2d at 164. Although the statute in *Thompson* did not include this limiting language, the North Dakota Supreme Court still found that it fell within the expansive federal definition of "estate" in 42 U.S.C. § 1396p(b)(4) of "assets in which the medical assistance benefits recipient 'had any legal title or interest in at the time of death.'" 586 N.W.2d at 851 n. 3.

As noted above, the Bruce's residence was titled as a tenancy by the entirety. Under Missouri law,

> "[a]n estate by the entireties is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person, *each being vested with entire estate.* Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate. It differs from a joint tenancy where the survivor succeeds to the whole estate by right of the survivorship; in an estate by entireties the whole estate continues in the survivor. *The estate remains the same as it was in the first place, except that there is only one tenant of the whole estate whereas before the death there were two.*"

*In re Estate of Honse,* 694 S.W.2d 505, 508 (Mo.App. S.D.1985) (quoting *Greene v. Spitzer,* 343 Mo. 751, 123 S.W.2d 57, 60 (Mo.1938)) (emphasis supplied by *Honse* court). Thus, although the estate passes in its entirety to the surviving spouse upon the death of one spouse, the predeceased spouse clearly has a "legal title or interest" in the property at the time of death. The Missouri statute does not define "combined resources." "When a term is not defined, the legislature is not held to a technical meaning, but rather reference is made to the dictionary to find the meaning that the legislature intended." *Fisher v. Waste Management of Missouri,* 58 S.W.3d 523, 526 (Mo. banc 2001). "Combine" is defined as "to come or bring into union; to unite or join," and "combined" is defined as "united closely." *Webster's New Twentieth Century Dictionary* 360 (2d ed.1979). The word "resource" is defined among other ways as "wealth; assets; available money or property." *Id.* at 1542. Accordingly, "combined resources," by definition, means joint wealth or assets. Nothing could be more unqualifiedly "combined resources" than a tenancy by the entirety, where one estate is vested in two individuals.

Thus, it is my view that the legislature expanded the definition of "estate" sufficiently in § 473.399 to permit estate recovery of medical benefits as allowed by 42 U.S.C. § 1396p(b)(4).

I am mindful that the Eastern District of this Court, like the majority here, recently concluded that "Missouri's statutory definition of 'estate' does not allow for spousal recovery." *Shuh,* 248 S.W.3d at 89. Curiously, the *Shuh* court found *Thompson* and *Jobe* "persuasive," and relied on them in holding that "Congress intended the term 'estate' can have a broad meaning under the Medicaid Act allowing for spousal recovery," but it did not apply their reasoning in analyzing Missouri's statutory scheme. *Id.* at 88. In any event, since *Shuh* reached essentially the same result as the majority here, I must respectfully differ with it as well.

For all the foregoing reasons, I would affirm the judgment of the learned trial judge below and allow the State of Missouri's claim against Respondent Randy R. Bruce, Personal Representative, in the amount of $80,003.00 and assign the claim to Class 7.